**Chester J. FILIPOWICZ,**
**Plaintiff–Appellee,**

v.

**AMERICAN STORES BENEFIT PLANS COMMITTEE, a corporation, Prudential Insurance Company of America, a corporation, Defendants–Appellants.**

**Nos. 94–2387, 94–2692 and 94–3339.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1995.

Decided June 6, 1995.

---

Gary S. Mueller (argued), Kenneth A. Grey, McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, Joliet, IL, for plaintiff-appellee Chester J. Filipowicz in No. 94–2387.

Francis D. Morrissey, Michael A. Pollard, Lisa S. Brogan (argued), Baker & McKenzie, Chicago, IL, for defendant-appellant American Stores Benefit Plans Committee, a corp.

Timothy J. Rathbun, Gary S. Mueller (argued), Kenneth A. Grey, McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, Joliet, IL, for plaintiff-appellee Chester J. Filipowicz, individually in No. 94–2692.

Timothy J. Rathbun, Gary S. Mueller (argued), Kenneth A. Grey, McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, Joliet, IL, for plaintiff-appellee Chester J. Filipowicz in No. 94–3339.

Alan W. Brothers, Ellen E. Douglass, Lisa S. Brogan (argued), Carney & Brothers, Chicago, IL, for defendant-appellant Prudential Ins. Co. of America, a corp.

Before BAUER and MANION, Circuit Judges, and MILLER, District Judge.*

MANION, Circuit Judge.

Chester J. Filipowicz brought this ERISA suit against American Stores Benefit Plans Committee and Prudential Insurance Company of America to recover $22,000 of benefits

---

* Hon. Robert L. Miller, Jr., of the Northern District of Indiana, sitting by designation.

under a supplemental life insurance policy issued to his late wife Ruth Filipowicz. Following a bench trial, the district court found in favor of Chester and awarded him $22,000, plus interest, costs and attorney's fees. American Stores and Prudential appeal from the district court's judgment in the underlying ERISA suit and its award of attorney's fees and costs. We affirm in both respects.

## I. Factual Background

On September 29, 1981, Ruth Filipowicz was hired by Jewel Food Stores, a subsidiary of American Stores, as a deli clerk. American Stores offers its employees (including employees of a subsidiary) the opportunity to purchase both basic and supplemental life insurance. Ruth enrolled for $11,000 of basic life insurance and $22,000 of supplemental life insurance. She designated her husband, Chester, as beneficiary.

To explain the terms of the life insurance plans, American Stores provided Ruth a copy of the American Stores Life Insurance Plan for Non-Exempt Employees ("Plan Summary"). Of relevance in this case was a provision in the Plan Summary which provided that an employee may carry supplemental life insurance while on disability leave, but only for the first fifty-two weeks of disability. This is significant because in April of 1988, Ruth was diagnosed with terminal breast cancer and on April 22, 1988 she went on disability leave. During her disability leave, Ruth continued to carry supplemental life insurance. On April 21, 1989, after obtaining a medical release, Ruth returned to work. This was just prior to the expiration of the fifty-two-week period. By returning to work before fifty-two weeks elapsed, Ruth was able to continue to carry supplemental life insurance.

Ruth continued to work until January 7, 1991, when her condition worsened and she once again went on medical disability leave. As the end of the fifty-two-week period for her second disability leave approached, Ruth received another medical release and was placed on Jewel Store's work schedule for December 31, 1991. On December 30, 1991, however, Jewel's store manager told Ruth that she could not return to work until her

employment status was verified. Before the store could verify her employment status, Ruth died on February 18, 1992. This was more than fifty-two weeks after Ruth went on disability leave for the second time.

Following Ruth's death, American Stores and its insurer Prudential Insurance Company of America ("Prudential"), denied Chester, Ruth's husband and the named beneficiary, benefits under the supplemental insurance policy. American Stores and Prudential claimed that at the time of her death Ruth was not entitled to carry supplemental insurance because she had been on disability leave for more than fifty-two weeks. After receiving two confirmations of the denial of the supplemental life insurance benefits, Chester filed a complaint pursuant to ERISA against American Stores Benefit Plans Committee and Prudential, seeking recovery of the supplemental life insurance benefits.

A bench trial was held. At trial, Chester argued that Ruth was not a "disabled employee" for more than fifty-two weeks because she had received a medical release allowing her to return to work within fifty-two weeks of the beginning of her disability leave. Thus, Chester asserted, the provision contained in the Plan Summary which limited supplemental insurance coverage to the first fifty-two weeks of disability leave was inapplicable. In support of his argument, Chester presented testimony from Ruth's doctor and co-workers indicating that Ruth had received a medical release and was ready, willing, and able to return to work. Prudential argued in response that since Ruth never actually performed any work for Jewel before the fifty-two-week period expired she was still on disability leave at the time of her death.

Up to this point, the trial focused entirely on whether Ruth was still on "disability leave." Then Rene Peralta, Prudential's claim adviser, testified that she had never seen the Plan Summary and did not rely on it to deny Chester benefits. Rather, Peralta testified, she relied on the terms of Prudential's insurance policy to deny Chester benefits. This admission sent the parties and the judge into a tailspin because everyone up to this point had proceeded on the assumption

that Chester had been denied benefits based on the Plan Summary's provision limiting supplemental life insurance to the first fifty-two weeks of disability. In response, the district court extensively questioned the parties and their attorneys concerning the terms and differences, if any, between the Plan Summary and Prudential's insurance policy.

When the dust settled, the district court was able to elucidate the following facts. American Stores provided its employees with the opportunity to carry life insurance, including supplemental life insurance. To assist its employees in understanding the terms of the life insurance policies, American Stores provided its employees with a copy of the Plan Summary. The Plan Summary, however, was not the actual life insurance policy. Rather, from time to time American Stores entered into contracts with different insurance carriers to underwrite the insurance coverage American Stores offered to its employees. The employees, however, were not provided with copies of the insurance policies, only with the Plan Summary.

Prior to January 1, 1992, American Stores contracted with Equitable Life Assurance Society to provide its employees with supplemental life insurance. Beginning January 1, 1992, Prudential underwrote the supplemental life insurance American Stores offered its employees. American Stores, however, did not redraft the Plan Summary when it changed insurance carriers. The Plan Summary, therefore, continued to refer to Equitable Life Assurance as the provider of the supplemental life insurance, even though after January 1, 1992 Prudential provided that coverage.

When Prudential took over for Equitable in providing supplemental insurance coverage, it issued a Group Insurance Contract which was supposed to track the coverage previously provided by Equitable. The Group Insurance Contract Prudential prepared, however, somehow failed to contain a provision which limited to fifty-two weeks a disabled employee's option to carry supplemental insurance. Thus, under the terms of the new Group Insurance Contract issued by Prudential a disabled employee could carry supplemental insurance for an unlimited disability period.

When it was discovered that the language contained in the Group Insurance Contract did not contain the fifty-two-week disability limitation, Prudential prepared an "Issue and Brief Correction Notice" dated March 17, 1992, with a retroactive effective date of January 1, 1992. The Issue and Brief Correction Notice sought to modify the Group Insurance Contract by adding certain "Leave and Layoff Provisions." Specifically, the "Leave and Layoff Provisions" added to the Group Insurance Contract provided that supplemental life insurance would continue for the first twelve months of the disability provided the employee pays any applicable premiums.[1]

Based on the date contained on the Issue and Brief Correction Notice, the district court concluded that Prudential and American Stores had modified the Group Insurance Contract on March 17, 1992 to limit a disabled employee's ability to carry supplemental insurance to the first fifty-two weeks of disability. The district court also concluded that prior to March 17, 1992, the Group Insurance Contract allowed a disabled employee to carry supplemental life insurance for an unlimited disability period. The district court further found that while the Plan Summary contained the fifty-two-week limitation, the terms of the Group Insurance Contract controlled because the Plan Summary provided that in the event of a conflict between the Plan Summary and the insurance policy, the terms of the Group Insurance Contract would govern. The district court then held that since Ruth had died prior to the March 17, 1992 modification, Chester was entitled to benefits of $22,000 under the Group Insurance Contract. The court also awarded Chester attorney's fees of $17,595.38, interest of $3,207.50 and costs of $2,482.45. American Stores and Prudential appeal.

---

**1.** Ruth tendered payments to American Stores for all contributions required of her, although American Stores returned her last contribution.

## II. Analysis

On appeal, American Stores and Prudential argue that the district court erred in questioning whether the Group Insurance Contract in effect at Ruth's death contained a provision limiting coverage to the first fifty-two weeks of disability. In a somewhat related argument, they contend that since Chester never raised this issue, he did not exhaust the plan's administrative remedies and accordingly, he cannot maintain an ERISA suit. Appellants next contend that the district court erred in finding that the Prudential policy in effect on Ruth's death did not limit supplemental insurance coverage to the first fifty-two weeks of disability. The appellants also claim that the district court abused its discretion in refusing to allow Prudential to present the testimony of a Prudential representative, Joan Gines, concerning the terms of the policy in effect at Ruth's death. Alternatively, American Stores and Prudential claim that since the supplemental life insurance plan was an employee welfare plan and not a pension plan, they could retroactively amend the supplemental insurance to limit coverage to the first fifty-two weeks of disability. And finally, the appellants claim that the district court abused its discretion in awarding Chester attorney's fees and costs.

### A. ERISA

Before we address these substantive issues, there is a preliminary matter which must be resolved. In this case, Chester brought a civil enforcement action against American Stores and Prudential pursuant to ERISA. Chester, however, did not identify the specific ERISA provision on which he premised his claim. We must, therefore, first decide which section of ERISA applies in this case.

In his complaint, Chester alleged that American Stores and Prudential breached their fiduciary duties and as a remedy he asked the court to impose a constructive trust on the insurance proceeds. This indicates that his claim was based on section 1132(a)(3) of ERISA, which allows individual recovery for breaches of fiduciary duties, only if equitable relief is available—such as

the imposition of a constructive trust. *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992–93 (7th Cir.1993) (an individual may seek equitable relief—such as a constructive trust—for a breach of fiduciary duty under Section 1132(a)(3)).

The district court, however, did not impose a constructive trust on the insurance proceeds. Instead, it ordered monetary relief by holding American Stores and Prudential jointly and severally liable to Chester for $22,000. This is an improper remedy for a claim based on the breach of fiduciary duties. *Id.* at 992 ("Liability for a breach of fiduciary duty runs to the plan and not beneficiaries as individuals."). American Stores and Prudential, however, did not object to the type of remedy the court imposed. They also consistently claimed that "this has always been a claim for denial of benefits and nothing more." We thus conclude that, despite the language used in Chester's complaint, defendants and Chester both consented to the case being tried as a claim for denial of plan benefits, rather than a breach of fiduciary duty claim. *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.1985) ("Since a complaint can be amended at any time, even in the court of appeals, to conform to the evidence, we ... simply deem the complaint so amended.")

We now turn to the merits of this case. In considering whether Chester was wrongfully denied supplemental insurance benefits, the first question presented on appeal is whether it was improper for the district court to question whether the insurance policy in effect on the date of Ruth's death limited coverage to the first fifty-two weeks of disability. The appellants argue that it was.

In determining whether an employee is entitled to benefits under an insurance policy, we must first look to the terms of that policy. This is a preliminary question of law, and one which the district court must answer before considering the merits of the case. *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1409 (7th Cir.1994); *Senn v. United Dominion Indust. Inc.*, 951 F.2d 806, 815 (7th Cir.1992). Here the district court encountered in the contractual language a po-

tentially serious conflict that the parties had not addressed. His inquiry was entirely appropriate and probably necessary. Accordingly, we reject appellants' attempt to overturn the district court's decision based on its role in questioning Prudential about the terms of the Group Insurance Contract.

■ The appellants also argue that Chester did not exhaust his administrative claim remedies as required to maintain an ERISA action. Appellants are correct that a plan beneficiary is generally required to exhaust a plan's claim procedures before filing suit in federal court under ERISA. *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,* 713 F.2d 247, 254 (7th Cir.1983). However, in this case the appellants conceded to the district court that Chester had exhausted all of his administrative remedies concerning the denial of benefits under the supplemental insurance policy. We therefore question why they would raise this argument on appeal.[2]

■ This brings us to American Stores and Prudential's main contention on appeal. They contend that the district court improperly found that the supplemental life insurance plan in effect on the date of Ruth's death did not limit coverage to the first fifty-two weeks of disability. In support of their position, they point to the Plan Summary which provides that supplemental insurance coverage "will continue for the first 12 months of your disability provided you pay any applicable premiums." But as explained above, the Plan Summary also provides that "[i]f a conflict should arise between the content of this booklet and the Master Policies or if any point is not covered herein, the terms of the Master Policies will govern in all cases." Thus, the Group Insurance Contract, not the Plan Summary governs; and the Group Insurance Contract provides that there was no time limit for coverage during an absence due to a disability.

Appellants also argue that the district court erred in finding that the fifty-two-week limitation contained in the Leave and Layoff Provisions was not a part of the Group Insurance Contract on the date of Ruth's death. In support of their position, they cite the testimony of Linda Clifford, Sharon Rosy and Renee Peralta, all of whom testified that Ruth could not continue her supplemental life insurance coverage beyond the first fifty-two weeks of disability. Appellants then argue that this interpretation of the supplemental life insurance plan should be given deference and affirmed because it was not arbitrary and capricious.

■ "A decision is arbitrary or capricious when the decision-maker 'had relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ..., or is so implausible that it could not be ascribed to a difference in view or the product of expertise.'" *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). In this case, Clifford, Rosy and Peralta's testimony that Chester was not entitled to benefits because Ruth could not carry supplemental life insurance beyond fifty-two weeks of disability leave runs counter to the evidence. Specifically, the evidence established that at the date of Ruth's death, the Group Insurance Contract then in force allowed an employee to carry supplemental life insurance for an unlimited disability period. The evidence also established that the clarification or amendment to the Leave and Layoff Provision was dated March 17, 1992—after Ruth's death. Appellants have pointed to no evidence which calls into question the district court's finding that

---

2. Appellants further contend that the district court improperly admitted evidence which was not before the plan administrator at the time of the denial of Chester's claim. Specifically, appellants object to the testimony of Ruth's coworkers and manager that Ruth wanted to return to work after her disability leave and testimony by Ruth's doctor concerning her health. Whether the district court erred in admitting this evidence, however, is irrelevant, because it had no bearing on the district court's conclusion that Prudential's policy did not limit supplemental life insurance benefits to the first fifty-two weeks of disability. *See, e.g., Stuart Park Assoc. Limited Part. v. Ameritech Pension Trust,* 51 F.3d 1319, 1323 (7th Cir.1995) (the alleged error was harmless because it had nothing to do with the focus of the trial).

the Leave and Layoff Provision was adopted on March 17. Instead they rely on Clifford, Rosy and Peralta's testimony that the Group Insurance Contract contained a fifty-two-week limitation. The express terms of the Group Insurance Contract, however, provided that supplemental insurance coverage may continue for an unlimited disability period and "a self-serving statement . . . that a party did not understand the contract to mean what it says (or appears to say) will not suffice."[3] *AM Int'l, Inc. v. Graphic Man. Assoc. Inc.*, 44 F.3d 572, 575 (7th Cir.1995) (quoting *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 622 (7th Cir.1989)). Moreover, American Stores and Prudential were "not free to cast aside the agreed upon terms of the insurance contracts" and deny Chester benefits. *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 328 (7th Cir.1994). We, therefore, conclude that by ignoring the plain language of the Group Insurance Contract in effect on the date of Ruth's death, Prudential and American Stores' denial of benefits was arbitrary and capricious.[4]

Appellants next claim that had the district court allowed Joan Gines—a Prudential representative—to testify, they could have established that the terms contained in the Leave and Layoff Provisions were a part of the Group Insurance Contract on the date of Ruth's death. It was not until after the close of the evidence, however, that Prudential and American Stores sought to present Gines as a witness. "[T]he district court has wide discretion in deciding whether to allow a party to reopen proofs after the close of evidence." *Kafka v. Truck Ins. Exc.*, 19 F.3d 383, 389 (7th Cir.1994).

In this case we cannot say that the district court abused its discretion in refusing to reopen the proofs. First of all, Gines was not named on the final pretrial order. Additionally, the trial transcript demonstrates that while Prudential and American Stores presented various employees as witnesses, who were supposedly knowledgeable about the ERISA plan and the denial of supplemental benefits to Chester, these people knew nothing about when the Leave and Layoff Provisions were adopted, even though this was "a very key issue in the case." Under these circumstances, it was not an abuse of discretion for the district court to conclude that "it would be fundamentally unfair to reopen the proofs to permit this witness to testify when the problem we face right now is of [defendants'] own making. . . ." Moreover, Gines' proffered testimony would have contributed little to defendants' case. In her proffer, Gines does not refute the district court's finding that the Leave and Layoff Provisions were adopted on March 17; nor does she aver that the

3. Evidence that the written contract did not conform to the parties' intent would be relevant for a theory of mutual mistake and a request for reformation of the Group Insurance Contract. *See Board of Tr. of U. of Ill. v. Insurance Corp. of Ireland, Ltd.*, 969 F.2d 329, 332 (7th Cir.1992) (insurance contracts may be reformed when clear and convincing evidence compels the conclusion that the writing does not properly reflect true intentions of parties, and there has been a mutual mistake); *Ramsey v. Colonial Life Ins. Co. of America*, 12 F.3d 472, 479–80 (5th Cir.1994) (in interpreting an ERISA–governed policy, the court noted that where both parties to a contract are mistaken as to a material aspect of the contract, a court can reform the contract). While Prudential and American Stores argued to the district court "that the contract was reformed, based on mutual mistake, the contract was reformed by the parties retroactive back to January 1, 1992," the district court rejected this argument and appellants do not reassert it on appeal.

4. We note that it is unclear whether American Stores and Prudential's decision to deny Chester

supplemental insurance benefits is entitled to the deference of the arbitrary and capricious standard of review. This is the appropriate standard of review when the plan gives the administrator discretion to interpret plan terms or otherwise to determine benefit eligibility. *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 287–88 (7th Cir.1994). In this case, the Plan Summary provided that the plan fiduciaries had discretionary authority to interpret the terms of the Plan, but the Group Insurance Contract did not contain a similar grant of discretionary authority. And the Group Insurance Contract provided that it replaced "any older booklets and certificates." Moreover, it is questionable whether the Plan Summary could ever apply in a claim involving Prudential because this Plan Summary only referred to Equitable Life Insurance, not Prudential. Nonetheless, we need not decide this issue because Filipowicz does not contest the propriety of the arbitrary and capricious standard and even under that more deferential standard, appellants lose.

Leave and Layoff Provisions were adopted prior to Ruth's death. Rather, in her proffer she contends that the terms contained in Leave and Layoff Provisions were always part of the supplemental insurance contract. We have already rejected Prudential and American Stores' attempt to overcome the express terms of the Group Insurance Contract by relying on extrinsic evidence, and Gines' proffered testimony offers nothing new. Accordingly, we conclude that the district court did not abuse his discretion by refusing to reopen proofs to allow Gines' testimony.

Alternatively, American Stores and Prudential claim that since the supplemental life insurance plan was an employee welfare plan and not a pension plan, they could retroactively limit supplemental insurance coverage to the first fifty-two weeks of disability, including the coverage of an employee who died while the old plan was in effect.

 Appellants are correct that a supplemental life insurance plan is an employee welfare plan and not a pension plan. *See Anweiler*, 3 F.3d at 990, n. 1.[5] Appellants are also correct that, as a welfare plan, the provisions of the supplemental life insurance are not subject to ERISA's vesting provisions. Appellants, however, are incorrect in arguing that they may retroactively modify a life insurance policy after the insured's death so as to take away the life insurance proceeds due a beneficiary at the date of the insured's death. First of all, the Group Insurance Contract expressly negates this argument, stating "an amendment will not affect a claim incurred before the date of change." *See Howe v. Varity Corp.*, 896

F.2d 1107, 1109–1111 (8th Cir.1990) (employee was entitled to health and disability benefits for injury or disability suffered before the plan was terminated); *Bartlett v. Martin Marietta Oper. Supp., Inc. Life Ins. Plan*, 38 F.3d 514, 517 (10th Cir.1994) (subsequent modifications to the plan do not affect the terms of the written plan in existence when insured died). Even absent this express contractual provision, at Ruth's death Chester became entitled to the $22,000 of insurance proceeds, not based on ERISA's vesting principles, but based on general insurance law which provides that a beneficiary's right to insurance proceeds vests on the date of the insured's death. *Combs v. Koch Indust., Inc.*, 785 F.Supp. 1374, 1377 (W.D.Mo.1992) (the interest in the proceeds of a life insurance policy vested at the very moment of the insured's death); cf. *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F.Supp. 379, 386 (D.S.C. 1993), *aff'd* 30 F.3d 554 (4th Cir.1994) ("the named beneficiary obtains no vested interest in the proceeds of the policy *prior* to the death of the insured") (emphasis added). A later modification, even one which is retroactive, can have no effect on a beneficiary's claim to benefits. *Bartlett*, 38 F.3d at 517 (holding that beneficiary was entitled to life insurance proceeds because insured died before life insurance plan was modified). Thus, while Prudential and American Stores were free to retroactively modify the plan provisions to limit benefits to the first fifty-two weeks of disability, anyone who died prior to the modification was entitled to proceeds under the prior policy.[6] Accordingly, the district court properly held that Chester was entitled to the $22,000 of insurance proceeds.

---

5. ERISA defines an employee welfare plan as "any plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (a) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, *death* or *unemployment*...." 29 U.S.C. § 1002(1) (emphasis added). While ERISA defines "pension plan" as "any plan, fund or program ... established or maintained by an employer ... [that] ... (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of the covered employment or beyond." 29 U.S.C. § 1002(2)(a).

6. On appeal, American Stores and Prudential also contend that the Leave and Layoff Provision limiting coverage to fifty-two weeks of disability was not a modification to the contract, but merely an interpretative guideline. Even if true, however, this does not further appellants' case because an interpretative guideline cannot limit coverage provided by the insurance contract. *See Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1038 (7th Cir.1990) (insured was entitled to health insurance benefits where insurance plan authorized benefits, even though interpretative guidelines disallowed coverage because insurance plan provisions control where interpretative guidelines conflict with plan provisions).

Appellants' final argument is that the district court erred in awarding Chester attorney's fees and costs. Section 1132(g)(1) of ERISA provides that "the court in its discretion may allow reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to award attorney's fees under ERISA a court should consider: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Bittner v. Sadoff & Rudoy Indust.*, 728 F.2d 820, 828 (7th Cir.1984). We review an award of attorney's fees for an abuse of discretion. *Id.*; 29 U.S.C. § 1132(g)(1).

In this case, the district court found that in considering the five factors the plaintiff was entitled to recover reasonable attorney's fees. In so holding, the district court found that an award of attorney's fees was appropriate because the members of the pension plan would benefit from the award of fees in this case. The district court also found that while the defendants' position was not frivolous, it was less than meritorious. In fact the district court stated that it "finds it almost incredulous that the defendants would not have learned from witness Peralta or some other Prudential or American employee what plan documents were actually in effect at the time of Ruth's death." In these circumstances, we cannot say that the district court abused its discretion in awarding Chester attorney's fees.

Appellants also argue that "at a minimum, plaintiff's award of costs and fees should have been reduced in the manner suggested in defendant American Stores Benefit Plans Committee's Response Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees and Bill of Costs." Appellants, however, offer no specific areas of abuse for our review and instead seek to incorporate an entire brief filed before the district court.

The district court considered these arguments in awarding Chester attorney's fees and costs, and in fact the district court must have been convinced by some of defendants' arguments because he reduced Chester's fee award from that requested. In doing so, the district court explained his rationale for the various reductions. This explanation and the reductions seem adequate, and we will not delve further into the district court's reasoning to search for an abuse of discretion. If there were specific areas where the appellants believe that the district court erred, they should have pointed those out. We will not search the record for an abuse of discretion.

### III. Conclusion

American Stores entered into an agreement with Prudential in which Prudential would provide supplemental life insurance benefits to employees of American Stores and Jewel. Prudential issued a Group Insurance Contract to Ruth Filipowicz. Under that insurance policy, Ruth was entitled to carry supplemental life insurance while she was on disability leave, no matter how long she was on leave. Prudential later issued an Issue and Brief Correction Notice modifying the terms of the supplemental life insurance policy. This modification concerned the Leave and Layoff Provisions and limited an employee's right to carry supplemental life insurance to the first fifty-two weeks of disability. Ruth, however, died before the contract was modified to limit coverage to the fifty-two weeks of disability. Therefore, Chester, as the beneficiary of the life insurance policy, was entitled to the proceeds of the policy. Under ERISA, Chester was also entitled to reasonable attorney's fees and costs, which the district court awarded. For these and the foregoing reasons, we

AFFIRM.