**Phillip E. COURI, Plaintiff,**

v.

**GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 95 C 6790.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1996.

Phillip E. Couri, Couri & Couri, Winnetka, IL, for plaintiff.

Peter M. Sfikas, Tamra Susan Kempf, Bell, Boyd & Lloyd, Chicago, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Phillip E. Couri has filed a one-count amended complaint challenging defendant Guardian Life Insurance Company of America's denial of dental benefits for plaintiff's dependant son under an employee welfare benefit plan governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff seeks injunctive relief, expenses, and attorney's fees. Defendant has filed the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, defendant's motion is denied.

### *FACTS*

Defendant is a licensed insurance company incorporated under the laws of the state of New York. Defendant entered into an insurance policy agreement with Bartnell, Ltd. ("Bartnell"), for an employee welfare benefit plan governed exclusively by ERISA. Plaintiff, his spouse, and dependent children ob-

tained coverage under defendant's plan with Bartnell, Group Health Plan # 197332 ("Group Plan").

On July 25, 1993, plaintiff's son, Peter A. Couri ("Peter"), was involved in an accident and sustained a serious injury to his teeth and mouth as a result. Plaintiff reported the injury and submitted claims to defendant on August 25, 1993. Defendant reimbursed plaintiff for his initial emergency medical costs. The treating physicians and dentists informed plaintiff that Peter would need surgery and additional medical assistance, but that a major portion of the surgery and dental repair could not be performed for approximately one year because the injuries he sustained in the accident had to heal before the additional surgery could be safely performed.

The Major Medical Expense Insurance section of the Group Health Plan contains the following provision:

> **Doctor's Charges for Surgery:** We cover doctor's charges for medically necessary surgery. We don't pay for cosmetic surgery. But we cover reconstructive surgery needed due to a sickness or injury. *This surgery can be performed either at the same time as, or after, other needed surgery.* We also cover reconstructive surgery needed due to a functional birth defect in a covered dependent child. [Emphasis added.]

The "OTHER LIMITATIONS" provision of same section states:

> **Dental Care and Treatment:** We cover: (a) the diagnosis and treatment of oral tumors and cysts; and (b) the surgical removal of impacted teeth.
>
> We also cover treatment of an injury to natural teeth or the jaw, but only if: (a) the injury occurs while the covered person is insured; (b) the injury was not caused by biting or chewing; and (c) *all treatment is finished within six months of the date of the injury.* Treatment includes replacing natural teeth lost due to such injury. [Emphasis added.]

Plaintiff submitted estimates and claims to defendant for Peter's proposed surgery and treatment in excess of $12,000. On March 24, 1995, defendant denied these claims because the treatment had not been completed within six months of the original accident. On May 11, 1995, plaintiff requested that defendant review its denial of claims. On June 6, 1995, defendant again denied coverage because all dental work had to be completed within six months of the original accident.

Plaintiff's complaint was originally filed in Cook County Circuit Court. Defendant timely removed plaintiff's action to this court and filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Thereafter, plaintiff filed a motion to remand the case to state court. On April 15, 1996, this court issued a memorandum opinion and order denying plaintiff's motion to remand and granting defendant's motion to dismiss without prejudice. Plaintiff filed an amended complaint on May 30, 1996, pursuant to which defendant brings the instant motion for summary judgment.

### DISCUSSION

#### I. STANDARD OF REVIEW

In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court clarified the standard of review under ERISA for denial of benefit cases: "[A] denial of benefits challenged under § 1132(a)(1)(B) [of ERISA][1] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In the latter circumstance, where a fiduciary's discretion is limited only by good faith, an "arbitrary and capricious" standard of review should be applied. *Morton v. Smith,* 91 F.3d 867, 870 (7th Cir.1996); *Exbom v. Central States Health and Welfare Fund,* 900 F.2d 1138,

---

1. Section 1132(a)(1)(B) states, in pertinent part: "A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

1142 (7th Cir.1990). Under this standard, a plan administrator's decision to deny benefits will not be overturned, "absent special circumstances such as fraud or bad faith, if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Exbom*, 900 F.2d at 1142 (citing *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985)).

■ Where a benefits plan grants the insurance company discretion in making coverage decisions, a conflict of interest may arise. *Newell v. Prudential Ins. Co. of Am.*, 904 F.2d 644, 650–51 (11th Cir.1990), *aff'd*, 961 F.2d 1583 (11th Cir.1992). The existence of a conflict of interest does not require *de novo* review where an arbitrary and capricious standard is otherwise applicable. *Id.* Nonetheless, the conflict is a "factor" in determining whether the insurance company's decision was arbitrary and capricious. *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57. Put another way, there is heightened scrutiny for arbitrariness and caprice in cases involving a conflict of interest, *Marecek v. Bellsouth Telecommunications, Inc.*, 49 F.3d 702, 705 (11th Cir.1995); *Newell*, 904 F.2d at 651, and "[t]he greater the conflict of interest, the less the court defers to a denial of benefits that appears to be wrong," *Chalmers v. Quaker Oats Co.*, 859 F.Supp. 1149, 1157 (N.D.Ill.1994), *aff'd*, 61 F.3d 1340 (7th Cir. 1995).

■ The "Claims Procedure" section of the Group Health Plan states that defendant "is the Claims Fiduciary with discretionary authority to determine the eligibility for benefits and to construe the terms of the plan with respect to claims." Under *Firestone, de novo* review is not appropriate; rather, the arbitrary and capricious standard of review is applicable here. However, the fact that defendant is both the insurer and the fiduciary with discretionary authority to make coverage decisions creates a conflict of interest. The insurer has a profit-making motive, while the fiduciary has an obligation to act in the best interest of the plan participants. The court recognizes this conflict and, accordingly, affords defendant's decision less deference than normally given under an arbitrary and capricious standard of review.

## II. DENIAL OF BENEFITS

■ In reviewing defendant's denial of benefits under the Group Health Plan for Peter's anticipated surgery and dental expenses, the court must first look at the terms of the plan. *Filipowicz v. American Stores Benefit Plans*, 56 F.3d 807, 812 (7th Cir. 1995). Here, the Group Health Plan expressly excludes from its coverage treatment for dental injuries completed more than six months after the date of the injury. The record is clear that the Peter's proposed surgery and medical treatment in plaintiff's claims did not and will not occur within six months of the accident. Notwithstanding these facts, plaintiff contends that defendant's decision was arbitrary and capricious because: (1) the provision in the Group Health Plan relied on by defendant is ambiguous and in direct conflict with another provision in plan; (2) the treating physicians and dentists advised plaintiff that much of the surgery and additional medical treatment Peter needed could not be performed for about a year because of certain medical risks; (3) plaintiff submitted timely estimates and claims to defendant, but defendant did not inform plaintiff of its decision to deny coverage until more than a year later.

The court finds plaintiff's second argument to be unpersuasive. Plaintiff contends that defendant's decision is against sound medical practice; he should not be penalized for the dental treatment Peter may have in the future which he could not have had within six months of the accident for medical reasons. Although emotionally provoking, this argument is insufficient to preclude summary judgment. Defendant's Group Health Plan, like most health insurance plans, provides limited coverage. All medical and dental procedures performed at all times for all insured individuals are not covered. The court does not find arbitrariness and caprice in defendant's decision for these reasons.

Plaintiff's first and third arguments, however, give the court reason to pause. The plain language in the "OTHER LIMITATIONS" provision of the Major Medical Expense Insurance section relied on by defendant is unambiguous. It covers "treatment

of an injury to natural teeth or the jaw, *but only if* . . . all treatment is finished within six months of the date of the injury." [Emphasis added.] The provision cited by plaintiff, "Doctors' Charges for Surgery," is also in the Major Medical Expense Insurance section, and is also straightforward. However, when juxtaposed, the two provisions are inconsistent. The former excludes surgery or treatment for a dental injury completed six months after the injury, while the latter covers "all medically necessary surgery . . . [including] reconstructive surgery needed due to a sickness or injury . . . [which] can be performed either at the same time as, or after, other needed surgery."

The court recognizes that the policy must be read as a whole and that, when viewed from this perspective, the two provisions at issue may be read as defendant contends they should. The "OTHER LIMITATIONS" provision is a general limitations provision, which seems to qualify all grants of coverage in the Major Medical Expense Insurance part of the plan. Moreover, the "COVERED CHARGES AND SPECIAL LIMITATIONS" heading in the same section, under which the "Doctor's Charges for Surgery" provision is found, cautions insured individuals that "what we pay is subject to all the terms of this plan," and instructs them to "[r]ead the entire plan to find what we limit or exclude." If the policy's coverage were as unambiguous as defendant contends, however, one would expect defendant to interpret and apply its provisions properly. This it has failed to do.

In arguing that the "Doctor's Charges for Surgery" provision does not apply to treatment by dentists, defendant claims that there is a distinction between "doctor" and "dentist" that omits dentists' treatment from coverage for "doctor's surgery." This distinc-

tion, defendant argues, led the drafter of the policy to include "two distinct provisions." Defendant should read its policy more closely. The "definitions" section of the Major Medical Expense Insurance portion of the plan defines "doctor" as "any medical or *dental* practitioner we're required by law to recognize who: (a) is properly licensed or certified under the laws of the state where he practices; and (b) provides services which are within the scope of his license or certificate and covered by this plan." [Emphasis added.] Defendant's selective, impermissible reading of its policy demonstrates an enhanced conflict of interest and, thus, compels this court's enhanced scrutiny of defendant's denial of benefits. Under the facts and arguments presented, the court concludes that there is a genuine issue of fact as to whether defendant acted arbitrarily and capriciously in denying plaintiff's claims.

Plaintiff's third argument highlights what may be another error on defendant's part. Under the "Claims Procedure" section of the Group Health Plan, defendant is required to notify claimants of its decisions on benefits eligibility claims "within 90 days after defendant received the claim. If special circumstances require an extension of time for processing the claim, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period." After Peter's accident on July 25, 1993, plaintiff submitted estimates and claims for Peter's proposed surgery and future medical expenses to defendant. Defendant did not notify plaintiff of its decision until March 24, 1995, almost two years after the original accident. The record is unclear on when plaintiff first filed its estimates and claims for Peter's proposed surgery and treatment of $12,000.[2] Thus, genuine issues of material fact remain about whether defendant failed to follow its own

---

**2.** In its Local Rule 12(N) response, plaintiff states that it made "persistent" inquiries to its plan administrator and defendant about the status of its claims, and that defendant did not make any request for resubmission until December 7, 1994. Defendant, however, argues that plaintiff's response should be stricken because it does not comply with Local Rule 12(N).

Rule 12(M)(3) requires a movant for summary judgment to set forth material issues of fact for which she believes there is no dispute. Rule

12(N)(3) permits the non-moving party to respond to such statements and to file any additional facts that require the denial of summary judgment. The movant may then respond to the additional facts set forth in the 12(N) statement. Both parties may attach affidavits and other materials to support their statements of fact, and must provide citations to the record. Further, Rule 12(N)(3) states that any facts set forth by the moving party in its 12(M) statement "will

notification procedures and, if so, whether its delay was so excessive that it constituted arbitrary and capricious conduct. *See Newell,* 904 F.2d at 652 (holding that the defendant was liable for expenses incurred by the plaintiff from specified date to time the plaintiff received notice because the defendant abused its discretion in ignoring policy standards for providing notice to claimants and in failing to provide notice to the plaintiff in a reasonable time). Defendant's failure to notify plaintiff of its denial of the claim until March 24, 1995, is particularly egregious in the instant case because it deprived plaintiff of the opportunity to consider other treatment options within the six months following the accident. Accordingly, defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, the court denies defendant's motion for summary judgment.

deemed to be admitted unless controverted by the statement of the opposing party."

Here, plaintiff's response does not properly admit or deny each numbered paragraph in defendant's 12(M) statement. Plaintiff simply repeats some of defendant's paragraphs and adds additional facts. Because plaintiff has failed to comply with the requirements of Local Rule 12(N), the court strikes plaintiff's 12(N) response to the extent that it includes facts not in defendant's 12(M) statement.