Candido MEDINA and Olga
Medina, Plaintiffs,

v.

TIME INSURANCE COMPANY,
Defendant.

No. IP 97–0325–C H/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 17, 1998.

A. Luis Ortiz, Ortiz & Associates, Indianapolis, IN, for Plaintiffs.

Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, IN, for Defendant.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

Plaintiffs Candido and Olga Medina brought this action under the Employee Retirement Income Security Act (ERISA) against defendant Time Insurance Company to recover benefits denied under an employee welfare benefit plan providing health care insurance. See 29 U.S.C. § 1132(a)(1)(B) (authorizing actions for denial of benefits). The question presented is whether the administrator of an employee welfare benefit plan providing health benefits may, after the plan has taken effect, retroactively change the effective date of the plan so as to deny a beneficiary's claim for benefits for medical care. The answer is no. The court therefore denies defendant's motion for summary judgment.

### Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if and only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In reviewing the parties' submissions, the court must consider the evidence in the light reasonably most favorable to the nonmoving party. The issue is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue.

### Undisputed Facts

Viewed in the light reasonably most favorable to plaintiffs, the evidence before the court shows the following facts. Plaintiff Candido Medina works as an auto mechanic at Ko's Auto, Inc. In November 1995, the owner of Ko's Auto, Chung Koh, was approached by one Mark Haagsma about obtaining health insurance for his employees. On November 16, 1995, Koh completed an application form for insurance with defendant Time Insurance and wrote a check for a deposit. Koh Dep. Exs. 1, 2. Candido Medina also completed an application on the same day. Koh Dep. Ex. 3. Time Insurance received the applications on or about November 22, 1995. Time Insurance did not issue a policy immediately because of some uncertainty as to whether Haagsma was authorized to write business for it, but by about December 4, 1995, it had verified Haagsma's authority. Sanders Aff. ¶¶ 3, 5. Time Insurance then underwrote the application and mailed an insurance certificate to Haagsma on or about December 15, 1995. Sanders Aff. ¶ 6. The certificate listed an effective date of December 1, 1995, as did a "Plan Summary Description" produced at Koh's deposition. Koh Dep. Exs. 3, 4. In mid-December, plaintiff Candido Medina received a certificate from Time Insurance showing an effective date of December 1, 1995. C. Medina Aff. ¶ 7.

Koh paid the entire premium and then deducted half the premium cost from his employees' paychecks. Koh Dep. at 14–15. He began taking these payroll deductions when he and his employees received insurance cards sometime in December 1995. Koh Dep. at 10, 16. When he and his employees received their cards in December, Koh told his employees that they could then go to the hospital. Koh Dep. at 10. Koh remembers receiving a Plan Summary Description stating the effective date of the policy was December 1, 1995, but he apparently did not believe it to be accurate because he and his employees had not had their insurance cards for the entire month of December. Koh Dep. at 26. At some point, Koh apparently discussed his concerns with Haagsma about not having insurance cards for the entire month of December 1995, and Haagsma told him that he could pay his next monthly premium (which came due on January 1, 1996) in February 1996. Koh Dep. at 26, Ex. 6.

Plaintiff Olga Medina began experiencing stomach pains on December 23, 1995. She saw her family doctor, Dr. Rudolph Rouhana, on January 9, 1996. Dr. Rouhana made a tentative diagnosis of "possible peptic ulcer disease, parcreatitis [sic], and unlikely gallbladder disease." O. Medina Aff. ¶ 5; Winkowski Aff., Att. A. Dr. Rouhana prescribed medication that relieved Mrs. Medina's stomach pain. O. Medina Aff. ¶ 6. On January 15, 1996, however, Mrs. Medina was admitted to the hospital complaining of nausea, vomiting, abdominal pain and "coffee ground emesis." Winkowski Aff., Att. B. On January 17, 1996, Mrs. Medina was diagnosed as suffering from acute cholecystitis and underwent a laparoscopic cholecystectomy (surgical removal of the gallbladder). Winkowski Aff., Att. C; O. Medina Aff. ¶ 9.

Sometime in January 1996, Time Insurance received a request from Haagsma to change the effective date of Ko's Auto's health insurance from December 1, 1995, to January 1, 1996, and was told that the reason for the request was that Koh did not want to pay premiums for the month of December because he and his employees did not have the policy and insurance cards for use during

the entire month. Sanders Aff. ¶ 7. On January 31, 1996, Time Insurance mailed a revised certificate and new identification cards reflecting a new effective date of January 1, 1996. *Id.*

Both the Plan Summary Description and the insurance certificate provided to Koh and his employees in December 1995 listed the policy's effective date as December 1, 1995. Both documents also showed that preexisting conditions were not covered by the policy. The certificate defines a preexisting condition as:

An illness or injury, whether disclosed on the Covered Person's application or not:

1. For which the Covered Person received medical advice, diagnosis, treatment or services from a Physician within the 6–month period prior to the Covered Person's Effective Date; or

2. That produced signs or manifested symptoms within the 6–month period prior to the Covered Person's Effective Date.

Koh Dep. Ex. 3.

Time Insurance received the bills for Mrs. Medina's treatment on or about February 2, 1996, and requested records from the hospital and Dr. Rouhana, O. Medina Aff. ¶ 10; Winkowski Aff. ¶¶ 4–5. Based on those records, Time Insurance determined that Mrs. Medina's condition had begun manifesting symptoms around December 23, 1995. Winkowski Aff. ¶ 7. Treating the effective date of the Ko's Auto policy as January 1, 1996, as indicated in the later certificate issued January 31, 1996, Time Insurance denied the Medinas' claim for benefits on the basis that Mrs. Medina's condition was a preexisting condition as defined in the policy. Winkowski Aff. ¶ 7. There is no evidence in the record suggesting that the Medinas received actual or constructive notice that Time Insurance had revised the effective date of the policy before Mrs. Medina entered the hospital on January 15, 1996, or when she underwent surgery on January 17, 1996.

## Discussion

Benefit determinations are reviewed *de novo* under ERISA unless the plan

administrator has discretionary authority to determine eligibility. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan documents give the plan administrator discretionary authority, the court reviews a benefit decision under a deferential "arbitrary and capricious" standard. *E.g., Trombetta v. Cragin Federal Bank for Savings ESOP*, 102 F.3d 1435, 1437 (7th Cir.1996). The insurance certificate in this case addresses this issue directly:

### ERISA

This plan gives Us sole discretion to determine eligibility for benefits and to provide the final decision as to the validity of a claim relating to contractual provisions after such review has been completed. However, in no event will We be considered a fiduciary as defined in the Employee Retirement Income Security Act of 1974, as amended.

We will have such power and duties as are necessary for the proper administration of this plan, including but not limited to the power to make decisions with respect to the application and interpretation of this plan. Our determinations will be final, binding and conclusive upon each party or person interested or concerned.

Koh Dep., Att. 3. This language is sufficient to confer discretionary authority. No "magic words are required to confer discretion on an administrator," and this language is comparable to that the Seventh Circuit has found sufficient to create discretionary authority. See *Chojnacki v. Georgia–Pacific Corp.*, 108 F.3d 810, 815 (7th Cir.1997) (administrator is "responsible for interpretations" of plan, and "interpretation" includes "construction"). The quoted provisions in this plan show that the "administrator has the power to construe uncertain terms [and] that eligibility determinations are to be given deference." See *Firestone*, 489 U.S. at 111, 109 S.Ct. 948; accord, *Ramsey v. Hercules, Inc.*, 77 F.3d 199, 205 (7th Cir.1996). Accordingly, the court reviews defendant's denial of benefits under the arbitrary and capricious standard.

Plaintiffs suggest that the symptoms Mrs. Medina experienced in December 1995 were "cured" by Dr. Rouhana on January 9, 1996, and were therefore unrelated to her gallbladder condition that required surgery on January 17, 1996. In support of their position, plaintiffs cite Dr. Rouhana's letter of March 20, 1996, as well as Mrs. Medina's affidavit. Dr. Rouhana made no such statement in his letter. It is highly doubtful that Mrs. Medina's conclusory statement that she was cured would be sufficient to create a genuine issue as to the actual medical relationship between her symptoms in December and her surgery in January. See *Goffman v. Gross*, 59 F.3d 668. 671–72 (7th Cir.1995) (lay testimony not sufficient to avoid summary judgment on issue of medical effects of secondhand smoke because issue was "not within the ken of the ordinary person"); *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1179 (7th Cir.1991) (expert testimony required to prove causal connection between administration of drug and injuries); *Porter v. Whitehall Laboratories, Inc.*, 791 F.Supp. 1335, 1341–42 (S.D.Ind.1992) (expert testimony essential to prove connection between ingestion of drug and plaintiff's injury), *aff'd*, 9 F.3d 607, 612 (7th Cir.1993). Even assuming that Mrs. Medina's statement were sufficient to raise a genuine issue about her actual medical condition, however, that would not be sufficient to avoid summary judgment on the denial of benefits. Plaintiffs must show that defendant's decision was not merely wrong but "arbitrary and capricious." On this record a reasonable trier of fact could not find that Time Insurance's determination that Mrs. Medina's gallbladder condition manifested symptoms in December 1995 was arbitrary or capricious. If the effective date of the Time Insurance policy were January 1, 1996, then Time Insurance would be entitled to summary judgment.

Thus, the principal issue here is whether Time Insurance could retroactively apply an effective date of January 1, 1996, to Mrs. Medina's claim, rather than the original December 1, 1995, date in effect when her symptoms developed. The health plan at issue here is an "employee welfare benefit plan" under ERISA. 29 U.S.C. § 1002(1)(A). As a welfare benefit plan, the plan is exempt from the accrual, funding, and vesting re-

quirements that ERISA imposes on employee pension plans. See, *e.g., Member Services Life Ins. Co. v. American National Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 954 (10th Cir.1997); *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.1988). Accordingly, it is well established that an employer or plan sponsor is generally free to modify or terminate a welfare plan unilaterally for any reason at any time. See, *e.g., Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Member Services Life Ins. Co.,* 130 F.3d at 954; *Ravenscraft v. Hy–Vee Employee Benefit Plan & Trust,* 85 F.3d 398, 401 (8th Cir.1996); *Wise v. El Paso Natural Gas. Co.,* 986 F.2d 929, 934–35 (5th Cir.1993).

At the same time, courts have generally rejected attempts by welfare benefit plan sponsors or insurers to apply changes *retroactively* so as to deny benefits that had already vested. Case law is relatively sparse, probably because such audacious attempts to call off a bet after the race is over are rarely litigated. Time Insurance has offered no authority providing meaningful support for its position on this point. In *Filipowicz v. American Stores Benefit Plans Committee,* 56 F.3d 807 (7th Cir.1995), the Seventh Circuit provided a good example of cases rejecting such attempts at retroactive changes to welfare benefit plans. In that case the issue was whether a covered employee was entitled to carry supplemental life insurance if she had been on disability leave for more than 52 weeks. The district court concluded, and the Seventh Circuit agreed, that the plan had not imposed a 52–week limit before the employee died. The employee died after having been on disability leave for about 59 weeks. Then, about a month after the employee died, the insurance company issued a document that purported to amend the plan to impose such a limit *and to make the amendment retroactive to a date seven weeks before the employee died.* See 56 F.3d at 810–11. The Seventh Circuit rejected this

astonishing attempt to rewrite the plan retroactively. The court relied in part on general insurance law holding that a beneficiary's right to life insurance proceeds vests when the insured dies. 56 F.3d at 815. "A later modification, even one which is retroactive, can have no effect on a beneficiary's claim to benefits." *Id.*[1]

The Third Circuit rejected a similarly brazen attempt to modify a plan retroactively in *Confer v. Custom Engineering Co.,* 952 F.2d 41, 43 (3d Cir.1991). In that case the employer had announced orally to all employees that injuries from motorcycle accidents would be excluded from the company's health insurance plan. The written plan documents, however, did not contain that exclusion. An employee was seriously injured in a motorcycle accident about two months after the employer's oral announcement. When the employer then learned that the plan documents did not actually include the motorcycle exclusion, it executed a document amending the plan to impose such a limit and declaring the amendment was effective as of a date well before the employee's accident. The insurer then relied on the backdated amendment to deny the employee's claim for benefits. The Third Circuit had little difficulty rejecting the employer's position. The oral announcement was not an effective plan amendment because it did not comply with the plan's own procedure for amendments. In addition, "the change by means of a formal amendment could operate only prospectively." 952 F.2d at 43.[2]

In *Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa.,* 130 F.3d 950, the Tenth Circuit rejected a similar attempt at retroactive amendment of a welfare benefit plan. The court acknowledged that benefits need never vest prospectively under an ERISA welfare benefit plan. The court also explained, however, that under ERISA and general principles of insurance contract law, benefits vest (and cannot be taken away by retroactive plan amendment)

---

1. The court also rejected the insurance company's effort to defend the modification as an "interpretative guideline" that did not actually modify the plan. 56 F.3d at 815.

2. In both *Filipowicz* and *Confer,* the district courts awarded attorneys fees to the plaintiffs. In *Filipowicz* the court of appeals affirmed, 56 F.3d at 816, and in *Confer* the court of appeals dismissed the appeal on that issue for lack of appellate jurisdiction, 952 F.2d at 43, 44.

when performance becomes due under the contract. 130 F.3d at 956–57 (holding that amendment to allow health plan administrator to recoup benefits paid to participants from funds obtained by participants from third-party tortfeasors could not be applied retroactively after participants' claims had arisen).

A number of other decisions also support the general proposition that an employee welfare benefit plan under ERISA may not be amended retroactively so as to deny benefits that have already vested. See, *e.g., Barker v. Ceridian Corp.,* 122 F.3d 628, 638 (8th Cir.1997) (reasoning that, if employer faced no limits on ability to change benefits for employees whose claim had already arisen, the coverage "could become all but nominal and make the promise of lifetime benefits illusory."); *Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634, 638–40 (4th Cir.1995) (noting that "limits may exist on an employer's ability to rely on an amendment to deny coverage previously established" and holding that where coverage has vested, an amendment cannot apply retroactively to deny coverage); *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan,* 38 F.3d 514, 517 (10th Cir.1994) ("Subsequent modifications to a plan through the drafting of a summary plan description do not [affect] the terms of the written plan in existence when the plaintiff's claim arose."); *Wulf v. Quantum Chemical Corp.,* 26 F.3d 1368, 1378 (6th Cir.1994) (retroactively applying amendment that would reduce or delete benefits might render coverage illusory), quoting *Edward W. Sparrow Hosp. Ass'n v. Industrial Welding, Inc.,* 1990 WL 599020, *7 (W.D.Mich. 1990) ("Once a participant became entitled to coverage under the then existing terms of the plan, it would be entirely illusory to allow [the employer] to essentially divest them of that right by retroactively deleting the benefit."); *Prudential Ins. Co. of America v. Evergreen Oak Elec. Supply & Sales Co. Employee Benefit Plan,* 1996 WL 18970, *5–6 (N.D.Ill.1996) (citing cases and concluding that it is well established that under ERISA's common law a plan's amendment cannot be retroactive); *Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 884 (S.D.N.Y.1994) (noting that an employer is

ordinarily free to alter or eliminate a welfare plan at any time, but concluding: "Once a triggering event occurs that entitles the employee to a specified benefit, the employer . . . may not retroactively amend the plan to divest the plan participant of a payment that he was already entitled to receive."), *aff'd,* 60 F.3d 956 (2d Cir.1995).

To support its attempt at a retroactive amendment, Time Insurance relies primarily on the Supreme Court's decision in *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). That reliance is misplaced. In *Curtiss–Wright,* the Court held that a provision in a welfare benefit plan stating that the employer "reserves the right at any time to amend the plan" satisfied the requirements in 29 U.S.C. § 1102(b)(3) that a plan provide a procedure for amending the plan and identify the persons with authority to amend the plan. 514 U.S. at 75, 115 S.Ct. 1223. In *Curtiss–Wright* an employer had provided health benefits for its retired employees, but the employer (or some of its agents) then tried to amend the plan so as to terminate those benefits for retirees when the employer closed the facilities where those retirees had worked. The Supreme Court pointed out that ERISA does not require employers to provide any health benefits and that employers and plan sponsors are "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans ." 514 U.S. at 78, 115 S.Ct. 1223.

*Curtiss–Wright* supports defendant's premise that the employer and Time Insurance were free to decide upon the effective date of the plan in the first instance. But the Court's general statement in *Curtiss–Wright* does not suggest that employers or others are free, after designating an effective date and informing employees of their coverage, to change that date retroactively to deny benefits that would have been available but for the (attempted) retroactive amendment. For present purposes, the most relevant part of *Curtiss–Wright* is the Court's comment that "plan administrators appear to have a statutory responsibility *actually to run the plan in accordance with the currently operative, governing plan documents* and thus an

independent incentive for obtaining new amendments as quickly as possible and for weeding out defective ones." 514 U.S. at 84, 115 S.Ct. 1223 (emphasis added), referring to 29 U.S.C. § 1104(a)(1)(D) and discussion in 514 U.S. at 82, 115 S.Ct. 1223. *Curtiss–Wright* offers no support for Time Insurance's attempt at a retroactive amendment of the effective date. See *Member Services Life Ins. Co.*, 130 F.3d at 956–57 (citing this passage from *Curtiss-Wright* in support of conclusion that "post hoc amendment clearly cannot alter a plan provision in effect at the time performance under the plan became due").

There is a line of cases addressing a special problem that arises when an employer attempts to modify a health benefit plan to deny future benefits under circumstances in which the beneficiary already suffers from a condition that would be expected, absent any change, to entitle him or her to benefits for future medical treatment. A leading example is *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), in which the plaintiff-employee was diagnosed with HIV and then AIDS, and began submitting claims for medical expenses. The employer's plan had included a lifetime cap on medical benefits of $1 million. After learning that the plaintiff had AIDS, the employer amended the plan to place a lifetime cap of only $5000 on care for AIDS, with the amendment taking effect the following month. The Fifth Circuit upheld that amendment as applied to future benefits, but it was careful to note that the plaintiff had been reimbursed for all expenses incurred before the effective date of the amendment. 946 F.2d at 405 n. 5. See also *Owens v. Storehouse, Inc.*, 984 F.2d 394, 399–

400 (11th Cir.1993) (following *McGann*). These cases address a difficult problem under ERISA—how to reconcile an employer's right to modify a plan with a beneficiary's right to receive continuing benefits for long-term care for a medical condition that exists before the attempted modification. Compare *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d at 640 (holding that where employer had amended health plan to exclude a specific course of cancer treatment, the amendment could not be applied to beneficiary who had already begun the course of treatment, and distinguishing *McGann* and *Owens* on the ground that they involved treatment for the rest of the employees' lives, as opposed to a "procedure whose scope is relatively short and well defined"), with *Glauser–Nagy v. Medical Mutual of Ohio*, 987 F.Supp., 1002, 1012–13 (N.D.Ohio 1997) (disagreeing with *Wheeler* and applying *McGann* and *Owens* to relatively short-term course of treatment). That difficult problem is not presented in this case. Accepting the analysis in *McGann* for purposes of argument, nothing in *McGann* or these other cases suggests that a plan can be amended as Time Insurance attempted to amend this plan, by retroactively changing its effective date to exclude coverage for medical care already provided before the attempted amendment. Accord, *Member Services Life Ins. Co.*, 130 F.3d at 956 (pointing out that employer in *McGann* had honored all obligations to pay benefits for expenses incurred up to effective date of change, and holding that benefit plan amendment could not remove obligation to make benefit payments already due under terms of plan).[3]

---

**3.** In the decisions recognizing that rights can vest under welfare benefit plans, the Tenth and Fourth Circuits have distinguished between two general forms of health insurance. One form insures against illness or injury, and an insured's right to benefits arises or "vests" when the illness or injury is manifest. The other form of plan insures against medical *expenses*, and the insured's right to benefits vests when a covered expense is incurred. See *Member Services Life Insurance*, 130 F.3d at 954; *Wheeler*, 62 F.3d at 638. For purposes of this case, the distinction is not important. The Medinas' claim for benefits arose at the latest when Mrs. Medina underwent surgery on January 17, 1996. There is no evidence in the record establishing that Time Insur-

ance provided any written notice of the change to participants in the plan until after plaintiffs incurred the disputed expenses. Assuming for purposes of argument that an attempt at retroactively delaying the effective date might ever be valid, the formal written amendment to the Ko's Auto health plan changing the effective date to January 1, 1996, could not possibly have been valid any earlier than the date the employees actually received the written notice of the amendment, dated January 31, 1996. See *Bartlett*, 38 F.3d at 517 (amendment to life insurance plan not effective where amendment was not published and distributed to employees before the insured employee died).

The irony in Time Insurance's position should not be overlooked. A contract of insurance is based upon uncertainty about whether the individual insured will actually suffer an insured loss during the time covered by the policy. Health insurers use exclusions for preexisting conditions to prevent the insured from, in essence, placing a bet after the horse race is over. That is, a person with a preexisting condition knows at the time the contract takes effect that he or she will need to incur (or faces a significantly higher than average risk of incurring) covered expenses. The same general principles of insurance law prohibit the insurer from rejecting the bet after it knows how the horse race ended, *i.e.*, from retroactively changing the terms of the contract to avoid coverage.

Plaintiffs have not come forward with evidence showing that Time Insurance actually knew how this race had ended and tried to change the effective date with the conscious purpose of denying coverage for Mrs. Medina's surgery. The evidence before the court tends to show that Mr. Koh complained that his company should not have been charged a full month's premium for December 1995 when he and his employees did not receive insurance cards or certificates until the middle of the month. The attempted change of the effective date appears to have been merely a response to Mr. Koh's understandable complaint, although a simpler response might have been just a partial refund of the December premium.

The attempt to change the effective date of the policy retroactively, however, was not a permissible response to Mr. Koh's complaint. Regardless of the defendant's subjective purposes, such retroactive changes of effective dates with the effect of denying coverage fall well outside any "discretionary" authority that might be granted to a plan administrator under ERISA. See *Filipowicz*, 56 F.3d at 815; *Member Services Life Ins. Co.*, 130 F.3d at 956–57; *Confer*, 952 F.2d at 43. If an employer or insurer could retroactively amend the effective date of an employee health plan, that power could render employees' participation in their employer's health plan illusory. That power is also flatly inconsistent with the basic concept of insurance—distributing the risk of future uncertain losses. As one court has said, a conclusion that an employer could make retroactive changes to deny benefits "would entirely undermine the obligations imposed by ERISA upon a sponsor of a non-vesting benefit plan, since the employer could then ignore the requirements of the plan and, when sued, simply amend or terminate the plan retroactively to a date preceding the aggrieved participant's eligibility for benefits." *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. at 884. This court agrees and concludes that a plan sponsor or insurer may not retroactively amend the effective date of an employee welfare health plan if the effect of that amendment would be to deny benefits to which the participant or beneficiary is otherwise entitled. Accordingly, defendant's motion for summary judgment is hereby DENIED.

So ordered.