Richard C. BOESEL, et al., Plaintiffs,

v.

The CHASE MANHATTAN BANK, N.A., et al., Defendants.

No. 95–CV–6128–CJS.

United States District Court, W.D. New York.

June 16, 1999.

Lonny H. Dolin, Dolin & Associates, P.C., Rochester, NY, for plaintiffs.

John Brian Kopp, Nixon, Peabody, LLP, Rochester, NY, for defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

This is an action pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, in which former employees of the defendant Chase Manhattan Bank allege that the defendants used an incorrect formula to compute their retirement benefits. The plaintiffs state that they "seek retirement benefits that are expressly granted to them at Section 7.9 of the Current Chase [Retirement] Plan and in the two [summary plan descriptions (SPDs)] describing that Plan." In the alternative, the plaintiffs allege that even if the correct formula was used to compute their benefits, the defendants misled them for years as to how their benefits would be computed, by providing them with misleading plan summaries and brochures, and that the defendants should therefore be estopped from denying the additional benefits to which the plaintiffs' believed they were entitled. The defendants contend that they used the correct formula, and that the plaintiffs were given proper notice as to how their benefits would be computed. Now before the Court are the parties' cross-motions for summary judgment [# 29][# 36]. For the reasons that follow, the plaintiffs' motion is denied, and the defendants' motion is granted.

## BACKGROUND

The relevant facts are not disputed. Until July of 1984, the plaintiffs were employed by Lincoln First Bank ("Lincoln") and were participants in Lincoln's retirement plan (the "Lincoln Plan"). In July of 1984, Lincoln was merged into the Chase Manhattan Bank ("Chase"), and was renamed Chase Lincoln First Bank ("Chase Lincoln"). At the time of the merger, some of the Lincoln employees transferred to Chase, while others continued with Chase Lincoln. Chase had its own retirement plan (the "1976 Chase Plan"), which provided better benefits than the former Lincoln plan. Rather than allowing the Chase Lincoln employees to join the more beneficial Chase plan, the defendant created the Chase Lincoln Plan. In order to deal with the former Lincoln employees who transferred to Chase, Chase also amended its 1976 Chase Plan by adding Section 7.9.[1] Under the Chase Lincoln Plan, at retirement, former Lincoln employees would receive the greater of a) the accrued benefit under the Lincoln First plan as of the merger date [July 31, 1984], plus the Chase Lincoln Formula from that date onward; or b) the Lincoln First plan retirement benefit for the participant's entire career, both with Lincoln First before July 31, 1984, and with Chase Lincoln after July 31, 1984. (See, Chase Lincoln plan, Article IV, Section 4.01(c), (d) and Appendix A). Under the 1976 Chase Plan as amended by the addition of Section 7.9, at retirement, former Lincoln employees would similarly receive the greater of the "Lincoln plus Chase" formula, or the "all-Lincoln" formula for all years of service. In 1985, Chase Lincoln issued a Summary

---

1. The twelfth amendment to the 1976 Chase Plan stated, in relevant part:

 *7.9 Lincoln Retirement Plan Participants*
 A—Notwithstanding anything contained in this Section 7 to the contrary, the Retirement Benefit of a Member who was a participant in the [Lincoln Plan] immediately prior to [the merger] shall be equal to the greater of:
 (i) the Retirement Benefit of such Member calculated without regard to this Section 7.9, or

 (ii) that benefit which would have been payable to such employee under the [Lincoln Plan] ... were such Member's service and Compensation with an Employer taken into account in determining such Member's entitlement to a benefit under the [Lincoln Plan], reduced by any benefit payable to such Member under [the Lincoln Plan at the time of the merger].

Plan Description (SPD) of the Chase Lincoln plan.[2] This SPD reiterated that former Lincoln First employees would receive the greater of a benefit calculated under a) and b) above.

On January 1, 1988, the Chase plan and the Chase Lincoln plan were merged, therefore the former Lincoln First employees became participants in the Chase Plan. Under the merged plan, which retained Subsection 7.9 set forth above, the former Lincoln First employees continued to have their benefits calculated as they had been under the Chase Lincoln plan. (See, 1989 Chase Plan, Appendix VIII).

On September 21, 1988, the defendant's board of directors approved an amended plan, to take effect on January 1, 1989 (the "1989 Chase Plan"). The 1989 Chase Plan [3] states, in relevant part:

2.40 "Retirement Benefit" means monthly payments for life or other payments under the Retirement Plan, as determined under Section 7 or Section 7–A that are paid in the manner provided in Section 8 and Section 7–A, as the case may be.

### RETIREMENT BENEFITS

7.1 *In General. Except for the case of an Eligible Member described in Section 7–A.6 ["Grandfathered" former Lincoln First employee] who makes the election provided in such section, the Retirement Benefit of a Member under this Section 7 expressed as an annual benefit on the Normal Form shall be the net amount of a benefit determined under this Section 7 as of December 31, 1988.* The Retirement Benefit of an Eligible Member described in Section 7–A.6C who makes the election provided in Section 7–A.6A expressed as an annual benefit on the Normal Form shall be the net amount of a benefit as determined in this Section 7 as of the Eligible Member's Separation Date. A Retirement Benefit determined under this Section 7 shall consist of the payments, if any, from a Superseded Plan not attributable to contributions paid by the Member and payments from the Retirement Plan Trust. If any part of a Retirement Benefit is payable from a Superseded Plan, the Named Fiduciaries may, as a condition to the making of any payment from the Retirement Plan, require the Member to take such steps under the Superseded Plan as may be necessary to provide for payments from the Superseded Plan, or from the Retirement Plan on account of the Superseded Plan, as nearly as possible in conformance with the Retirement Benefit and form of payment thereof under Section 8 of the Retirement Plan.

7.9 *Lincoln Retirement Plan Participants. A—Notwithstanding anything contained in this Section 7 to the contrary, the Retirement Benefit of a Member who was a participant in the Lincoln First Bank's Retirement Plan immediately prior to becoming a Member in the Retirement Plan shall be equal to the greater of: (i) the Retirement Benefit of such Member calculated without regard to this Section 7.9, or (ii) that benefit which would have been payable to such employee under the Lincoln First Bank's Retirement Plan (as in effect immediately prior to the date on which Lincoln First Bank, N.A. and its affiliates became members of the Controlled Group) were such Member's service and Compensation with an Employer taken into account in determining such Member's entitlement to a benefit under the Lincoln First Bank's Retirement Plan, reduced by any benefit payable to such Member under such Lincoln First Bank's Retirement Plan.*

\* \* \* \* \* \*

---

**2.** This SPD was formally titled "RSVP '85: Resources for Security, Value, and Protection, Vol. 1."

**3.** The actual title of the 1989 plan is "The Retirement and Family Benefits Plan of the Chase Manhattan Bank, N.A., Restated, effective as of January 1, 1989."

**7.11** *Frozen Retirement Benefits. In the case of a member (other than an Eligible Member who makes the election described in Section 7–A.6) who becomes eligible to receive a Retirement Benefit under Section 7 on or after the Second Restatement Date [January 1, 1989], the Retirement Benefit under this Section 7 shall be determined, under the rules set forth in this Section 7, as if such Member had terminated his employment with a member of the Controlled Group on December 31, 1988.*

*SECTION 7–A*

[Sub-sections 7–A.1 through 7–A.5 describe the creation and funding of Chase Retirement Accounts for each Member, beginning in January 1989, and how upon retirement, those accounts will be used, depending upon the option chosen by the retiring employee, to purchase annuities, make lump-sum payments, or provide a combination of an annuity and lump-sum payment.]

**7–A.6** *Election by Eligible Member to Have Benefits Determined Under Section 7.* [Grandfathering Provision]

A—*In lieu of having his Retirement Benefit, optional benefit forms or other rights for Benefit Service after December 31, 1988 determined under this Section 7–A,* an Eligible Member described in Section 7–A.6C below may elect, within the 120 day period ending on his Benefit Commencement Date, to have his *Retirement Benefit under Section 7 include the Post–December 31, 1988 Accrual Period* described in Section 7–A.6B and to receive his Retirement Benefit under the Retirement Plan in one of the benefit forms provided in Section 8 or 10, as applicable. A Member who makes an election under this Section 7–A.6A shall file an election form designated for this purpose with the Named Fiduciaries prior to the Benefit Commencement Date.

B—*Post–December 31, 1988 Accrual Period.* For the purpose of Section 7–A.6A, the Post–December 31, 1988 Accrual Period shall be that period of Benefit Service beginning on January 1, 1989 which (1) continues the Member's most recent period of Benefit Service which began prior to December 31, 1988, and (2) ends on the Member's Separation from Service Date.

C—*Eligible Member.* [It is undisputed that the plaintiffs do not meet the criteria of "eligible members," i.e. they are not eligible to be "grandfathered."]

\* \* \* \* \* \*

*CLAIMS PROCEDURE*

**14.1** *In General.* Any member or any other person entitled to benefits under the Retirement Plan ("claimant"), or his duly authorized representative, may make a claim for a Retirement Plan benefit by filing such claim in writing with the Administrator. Such claims shall be heard and considered by the persons or the department or office designated by the Named Fiduciaries for such purpose.

**14.2** *Rights Upon Denial of a Claim.* In the event that a claim is denied, in whole or in part, a claimant shall be furnished with notice of the decision by the Administrator within a reasonable period of time after the filing of the claim. Such notice of the decision shall be in writing and shall state the specific reason(s) for the denial, the specific provision(s) of the Retirement Plan on which the denial was based. . . .

**14.3** *Appeal to the Named Fiduciaries.* Every claimant shall have a reasonable opportunity to appeal a denial of a claim to the Named Fiduciaries. . . .

**14.4** *Decision by the Named Fiduciaries.* A decision shall be rendered by the Named Fiduciaries within 60 days after the receipt of the request for review, provided that where special circumstances make a longer period for decision necessary or appropriate, decision may be postponed. . . . Any decision

by the Named Fiduciaries shall be in writing and shall set for the specific reason(s) for the decision and the specific Retirement Plan provision(s) on which the decision is based.

*ADMINISTRATION*

13.1 *Named Fiduciaries.* The authority to control and manage the operation and administration of the Retirement Plan ... subject to the provisions of Sections 13.3 and 13.4 hereof, shall be vested jointly in the named Fiduciaries. The Named Fiduciaries shall be designated by the Board of Directors of the Bank to serve until the next annual organization meeting of the Board and until their successors are designated and qualified....

 \* \* \* \* \* \*

13.5 *Amendment of the Retirement Plan.* The Named Fiduciaries shall have the power to amend the Retirement Plan and the Declaration of Trust to the extent required in order to effectuate the authority vested in them under Sections 13.2, 13.3 and 13.4

 \* \* \* \* \* \*

13.11 *Power to Construe.* The Named Fiduciaries shall have power to construe the provisions of the Retirement Plan and to determine any questions of fact which may arise thereunder.

(Italics added).

Pursuant to Section 7–A above, the January 1, 1989 Chase Plan utilized, from that date forward, the Chase Retirement Account ("CRA") as its retirement benefit. The CRA required Chase to make contributions to an employee's pension plan at a predetermined rated based on a participant's years of service. Under this plan,

employees had their accrued benefits frozen as of December 31, 1988, and from that point forward, they only continued to accrue benefits under the CRA calculation.[4] Accordingly, upon retirement, such an employee would receive the benefits that they had earned under the Chase Plan through December 31, 1988, plus whatever benefit they had subsequently accrued under the CRA program. However, as noted above under Subsection 7–A.6, certain "grandfathered" employees could elect not to have their benefits calculated under the CRA method. Instead, those eligible employees who were grandfathered had the option of electing to have their benefits calculated as under the former Chase Plan.[5] To be grandfathered, employees had to meet certain requirements for age and years of service. It is undisputed that the plaintiffs are not grandfathered. However, the plaintiffs contend that because of the "notwithstanding" language contained in Subsection 7.9, they retained the right to have their retirement benefits computed under the "all Lincoln" formula, even though they do not meet the requirements for grandfathering under Subsection 7–A.6. Moreover, the plaintiffs contend that because of the "notwithstanding" language in Subsection 7.9, the December 31, 1988 benefit determination date contained in Subsections 7.1 and 7.11 has no effect on them.

On October 24, 1988, the defendant notified employees by letter that it had made changes to the employee benefits plan, effective January 1, 1989. This letter mentioned the CRAs, but did not provide specific details of any changes in retirement benefits. (White Aff. [# 33], Exhibit 3). Along with this letter, the defendant distributed a pamphlet entitled "Designs for

---

**4.** The plaintiffs admit that Section 7–A did have the effect of freezing most Chase employees' benefits under the former plan, although they deny that their benefits were frozen. The plaintiffs assert that as former Lincoln First employees, pursuant to Subsection 7.9 they retained the right to have their

benefits for service after December 31, 1988 computed under the "all-Lincoln" formula.

**5.** The grandfathering provision applied to all plan participants who met the eligibility requirements, regardless of whether or not they had formerly been employed by Lincoln First.

the Future." (Plaintiffs' Exhibit 11). This pamphlet states, in relevant part:

On January 1, 1989, we are making changes in our retirement program ... changes which introduce a *new* and *innovative* approach to providing your retirement benefits.

\*\*\*

*Your new retirement program is called a Chase Retirement Account (CRA).*

\*\*\*

[I]f you are eligible to retire within the next eight (8) years, there are special rules to protect your retirement benefits to assure they will be as good as or better than the benefits under the current plan.

\*\*\*

Finally, although *our new approach becomes effective on January 1, 1989,* rest assured that all benefits you have earned under the current plan up *through December 31, 1988,* will be secured for you.

\*\*\*

*If you are employed by Chase as of December 31, 1988, and you are participating in the current retirement plan, you will automatically participate in the revised plan, and a Chase Retirement Account will be set up for you. . . .*

\*\*\*

[B]enefits earned under the current plan *through December 31, 1988* do not change. Chase will calculate your benefit *on that date* and secure the benefit you have earned under the old formula.

\*\*\*

**SPECIAL RULES FOR THOSE NEARING RETIREMENT AGE**

Special rules will apply to protect current benefit levels for employees who, as of December 31, 1988:

● are age 47 or more with at least 17 years of service;

● are age 52 or more; or,

● have 25 or more years of service.

If you meet any of these criteria when you are ready to retire, you may choose between:

● the retirement benefit calculated under the current plan formula, as revised to comply with the law, at the time your benefit is paid, or

● you total benefit under your Chase Retirement Account.

You make the choice.

\* \* \* \* \* \*

[W]hen you consider all of your sources of future financial security, you must include not only your new CRA and *your December 31, 1988 accrued benefit,* but also:

● your Chase Thrift Incentive Plan or Savings Plan account,

● Social Security benefits, and

● your personal savings and investments.

(Italics added). The defendant also gave its employees a document entitled "Briefing," dated November 28, 1988, which essentially contains the same information that was contained in the Designs for the Future pamphlet. (Palozzi Aff., Exhibit 1).

After the 1989 Chase Plan took effect, the plaintiffs received quarterly statements regarding the status of their retirement benefits. These statements showed an "accrued benefit as of 12/31/88," that remained unchanged on each of the quarterly statements. From this accrued benefit, the statements then estimated the monthly benefit that would be payable to the plaintiffs upon retirement, and stated that this estimated monthly benefit was "in addition to the Chase Retirement Account Balance shown below." These statements then showed a CRA total that increased with each statement.

Because of the aforementioned changes to the Chase Plan, in 1989 Chase issued a new summary plan description (SPD), entitled "Retirement Plan," to its employees. The SPD's introduction states, in relevant

part, that "[e]ffective January 1, 1989, the Chase Retirement Account Plan was amended to add the Chase Retirement Account." The introduction goes on to state that the "benefits for those members who participated in the Chase Retirement Plan prior to January 1, 1989, and other retirement programs of Chase affiliates, prior to adoption of the Retirement Plan by such affiliates **are described in separate appendices**." (Emphasis added). The SPD's table of contents contains a heading "Appendix A/ Benefits Under the Old Formula," directing the reader to page 26. The table of contents also contains a heading "Appendix B/ Benefits of Chase Lincoln First Bank," directing the reader to page 32. Immediately following the table of contents is a section entitled "Highlights of Your Chase Retirement Account." A section there entitled "Chase Retirement Plan Members on or before December 31, 1988" states that "[y]ou may be grandfathered in certain benefits," and directs those persons to Appendix A. A section entitled "Additional Information for Certain Employee Groups," informs "[p]articipants of Chase Lincoln First Bank Retirement Plan" that "[s]pecial rules apply for both service and benefits," and directs those persons to Appendix B. Accordingly, the SPD directed the plaintiffs, who were both Chase Plan members on or before December 31, 1988 and former participants in the Chase Lincoln Plan, to review Appendixes A and B.

Appendix A states, in relevant part:

**BENEFITS UNDER THE OLD FORMULA**

If you were a member of the Retirement Plan on December 31, 1988, and you retire or terminate your employment after January 1, 1989, *the provisions of the old formula will apply to benefits you accrued as of December 31, 1988.*

The following is a brief summary of the provisions of the old formula. . . .

\* \* \* \* \* \*

**Special Rules for "Grandfathered" Employees**

If, as of December 31, 1988, you met any of the following criteria, you may have a choice about how your retirement benefits are paid:

[The parties agree that none of the plaintiffs meet those criteria]

*If any of the above conditions apply to you, you are considered to be "grandfathered" in your benefits under the Retirement Plan. When you retire, you can choose between:*

*1. the retirement benefit calculated under the old formula, as revised to comply with the law, at the time your benefit is paid; or*

*2. your total benefit under the Chase Retirement Account plus your accrued benefit under the old formula as of December 31, 1988.*

*If you decide to have your entire retirement benefit calculated under the old formula (# 1 above), your benefit will be based on your total Years of Benefit Service at the time you retire or end your employment, including Benefit Service after December 31, 1988. In this case, no benefit will be paid under the CRA.*

If you elect to receive your entire CRA balance (# 2 above), your retirement benefits will consist of:

• your benefit under the old formula as of December 31, 1988; plus

• your CRA balance.

(Italics added). Appendix B states, in relevant part:

**BENEFITS OF CHASE LINCOLN FIRST BANK (CLFB)**

The benefits of the following groups of employees are determined under different *formulas:*

\* Lincoln First Retirement Plan members as of July 31, 1984;

\* \* \* \* \* \*

Your eligibility for Plan membership depends on which group of employees you

belong to. On the following pages, we will briefly outline the Plan provisions applicable to the employee groups described above.

\* \* \* \* \* \*

Members of the Lincoln First Retirement Plan as of July 31, 1984, who (a) subsequently transferred to Chase or (b) continued employment with Chase Lincoln First Bank after July 31, 1984, will receive the greater of (1) or (2).

(1) Your benefit under the Lincoln First Formula for all years of Service....

(2) The Chase and Lincoln First Bank Formula....

To summarize, Appendix A informs those persons who were members of the retirement plan prior to January 1, 1989, including the plaintiffs, that "the provisions of the old formula will apply to benefits you accrued as of December 31, 1988," while Appendix B is essentially identical to the language in the previous plans describing the formula for computing the benefits of former Lincoln First employees.

Chase issued two more summary plan descriptions, one in 1993 and one in 1994. The first, issued in September of 1993, was entitled "Retirement Plan," and states in relevant part:

> The Retirement Plan is designed to help you prepare for the future.... *This is how the plan works: Each Year the Plan will credit a Chase Retirement Account (CRA) set up in your name....*
>
> \* \* \* \* \* \*
>
> *Your benefit for service before 1989 is calculated as of December 31, 1988, under the old formula.*
>
> \* \* \* \* \* \*
>
> *If you participated in the Chase Retirement Plan before 1989 or in another retirement program of a Chase affiliate,* your benefits for *that service* are described separately at the end of this booklet, beginning on page 19. Be sure to read this section since some Plan

rules are different under the old formula.

\* \* \* \* \* \*

**Special Rules For Prior Service**

If you were a member of the Plan before 1989, special rules may apply to you. (Refer to page 19 of this booklet.)

If you formerly participated in the Chase Lincoln First Bank Retirement Plan, special rules may apply to you. (Refer to page 22 for details.)

\* \* \* \* \* \*

If you were participating in the Plan as of December 31, 1988, the benefit for your service *as of that date* is determined under the rules of the Plan then in effect. (See page 19.)

\* \* \* \* \* \*

Chase pays the full cost of the Plan. You make no contributions to your CRA.

\* \* \* \* \* \*

**How Your Plan Benefit is Determined**

A Chase Retirement Account (CRA) is automatically opened in your name....

\* \* \* \* \* \*

[Page 19] **Benefits for Service Before 1989**

If you were a member of the Retirement Plan on December 31, 1988, and you retire or terminate after that date, *your benefit for your service as of that date will be determined based on the provisions of the Plan then in effect.*

\* \* \* \* \* \*

[Page 22] **Benefits for Former Employees of Chase Lincoln First Bank (CLFB)**

The benefits of the following groups of employees are determined under different *formulas:* Lincoln First Retirement Plan members as of July 31, 1984....

\* \* \* \* \* \*

The Chart below provides a summary of the *prior plans* as they apply to you. For specific information on your benefits

*for your prior service,* please contact your Human Resources Service Center.

(Italics added). Under this last section dealing with former employees of Chase Lincoln First, the SPD sets forth the same formula described above, whereby the former Lincoln First employees are entitled to the greater of the "all-Lincoln" formula or the combination Lincoln First and Chase formulas. However, the majority of the 1993 SPD describes the terms of the new Plan, comprised of the CRA.

The other SPD, distributed in October of 1994, is entitled "Retiree Benefits Summary." As it pertains to this motion, it is essentially identical to the 1993 SPD. It states, in relevant part:

### The Retirement Plan

● If you retired on or prior to December 31, 1988, your retirement benefit was calculated under the prior Plan formula.

● If you retired after December 31, 1988, and were eligible for special grandfathering rules ... you had the choice of:

—receiving your benefit as calculated under the prior Plan formula based on your total years of benefit service at the time your retired, or

—receiving your Chase Retirement Account (CRA) balance plus the benefit you earned under the prior formula as of December 31, 1988.

● *If you retired after December 31, 1988 and were not eligible for the special grandfathering rules, your retirement benefit consists of your Chase Retirement Account (CRA) balance, plus the benefit you earned under the prior formula as of December 31, 1988.*

● If you participated in another retirement program of a Chase affiliate, your retirement benefit was calculated in accordance with the provisions of that program. Details of these programs are described beginning on page 49 of this booklet.

### Retirement Plan Benefits for Service Before 1989

If you retired after July 1, 1981, or *were a member of the Retirement Plan on December 31, 1988,* and you retired or terminated after that date, you benefit for your service *as of that date* will be determined based on the provisions of the Plan *then in effect.*

\* \* \* \* \* \*

### Benefits for Former Employees of Chase Lincoln First Bank (CLFB)

The benefits of the following groups of employees are determined under different *formulas: Lincoln First Retirement Plan members as of July 31, 1984....*

\* \* \* \* \* \*

The Chart below provides a summary of the *prior plans* as they apply to you. For specific information on your benefits *for your prior service,* please contact your Human Resources Service Center.

The SPD then sets forth the same formula as was used in the prior plans, i.e. the greater of all Lincoln First or a combination of Lincoln First and Chase.

Although portions of the 1989 Chase Plan have been set forth herein, the parties admit that none of the plaintiffs actually saw the retirement plan document. Their knowledge of their retirement benefits was based solely upon the SPDs and other documents summarizing the plan which Chase provided to them. However, the plaintiffs contend that they are entitled to the relief they are seeking under both the Plan and the SPDs.

On October 13, 1994, the Plan Administrator, John Farrell, presented a proposal to the Chase Board of Directors, which recommended a Voluntary Retirement Program (VRP). The memo set forth the general details of the proposed VRP, and stated that "[t]he program will be available for acceptance only during the 'window' period beginning on October 28, 1994 and ending on December 12, 1994." On October 17, 1994, the Chase Board of Directors

passed a resolution authorizing the VRP. (Chase Plan, Appendix VIII). On or about October 18, 1994, the plaintiffs received two letters from Chase, informing them of the upcoming VRP. The letters informed them, inter alia, that they would receive specific details of the VRP by the end of October, and that they would have to make an election on whether or not to participate by December 12, 1994, and that if they elected to participate, they would have to actually retire by December 31, 1994. As an incentive to retire, the VRP offered to add five years of service credit and five years of age for purposes of calculating retirement benefits. On or about October 28, 1994, the plaintiffs received their personalized VRP packets, which contained, among other things, a brochure describing the VRP program, and a personalized statement setting forth an estimate of the benefits that the particular employee would receive if he or she elected to take early retirement. The employees had to make a decision by December 12, 1994, and any decision made became irrevocable after seven days.

The VRP brochure that the plaintiffs received stated, in relevant part:

*Your Retirement Plan Benefit*

*If you were a member of the Retirement Plan on December 31, 1988, the provisions of the old formula will apply to the benefits you accrued as of December 31, 1988.*

*On January 1, 1989 or when you first became eligible to participate in the* *Chase Retirement Plan, a Chase Retirement Account (CRA) was established in your name. . . .*

\* \* \*

*If you are a grandfathered employee, you may elect to have your additional benefit calculated under the old formula, which was in effect until December 31, 1988, using all your years of Benefit Service.* See page 5 for more information about benefit options for grandfathered employees.

\* \* \*

*If you are not eligible for the special grandfathering provision, your retirement benefit will consist of your enhanced CRA balance, plus the benefit you earned under the old formula as of December 31, 1988.*

(Italics added).

The VRP estimates stated that the plaintiffs were not eligible to have their enhanced early retirement benefits calculated under subsection 7.9 of the Chase Plan, because they were not grandfathered. Rather, their benefit estimates were calculated using the Chase Lincoln formula for benefits accrued up through December 31, 1988, then using the CRA calculation for service from January 1, 1989 onward.[6]

The plaintiffs claim that when they learned that Chase was not going to apply the Lincoln First formula to all of their years of service, they contacted certain

---

**6.** In addition to the fact that it was evident that the plaintiffs did not meet the criteria for grandfathering set forth in the SPDs, at least two of the plaintiffs were informed that they were not grandfathered prior to receiving the VRP estimates. Richard Boesel received a letter dated June 15, 1993, and an attached estimated benefit statement, from a Chase benefit counselor, which set forth an estimate of his retirement benefits. The letter stated, in relevant part, "[p]lease note that this calculation is comprised of your Chase Retirement Account (CRA) balance which began on January 1, 1989 plus your December 31, 1988 accrued benefit payable at retirement." Similarly, plaintiff Robert Sturn was provided with a schedule of estimated monthly retirement benefits, dated June 29, 1994, which calculates his benefits using only the accrued benefits as of December 31, 1988, plus the CRA. Under the column entitled "grandfathered benefit," the statement indicates "N/A." The plaintiffs admit that they became aware that they were not grandfathered when they received their VRP packets (Dolin aff, # 36, p. 34. Par. 61). However, the plaintiffs are not claiming that they are or ever were qualified to be grandfathered. Rather, they contend that Plan Subsection 7.9 entitles them to the relief they seek without regard to the Plan's grandfathering provisions.

individuals at Chase, but these persons ignored their requests for additional information. Despite this, all of the plaintiffs elected to take early retirement under the VRP.

On December 22, 1994, by the Eighth Amendment to the Chase Plan, subsection 9, the defendants changed the powers of the named fiduciaries as follows:

Effective January 1, 1989, Section 13.11 is amended in its entirety to read as follows: The Named Fiduciaries shall have full discretionary power to construe and interpret the provisions of the Retirement Plan and to determine any questions of fact and eligibility for benefits which may arise under the Retirement Plan.

After retiring, on February 7, 1995, one of the plaintiffs, John Leonardi, wrote to the plan administrator, John Farrell, to complain that his benefits had been calculated incorrectly, because Chase did not apply the Lincoln First formula to all of his years of service. On March 7, 1995, Farrell wrote back to Leonardi, informing him that his request was denied, because under the terms of the plan, he was not entitled to the "additional benefits" that he was requesting.

On March 15, 1995, Leonardi appealed this determination to the Named Fiduciaries of the plan. As part of his appeal, Leonardi submitted a copy of his original complaint [# 1] in this action. By a letter dated May 1, 1995, the named fiduciaries informed Leonardi that they would review his appeal at their June meeting. None of the named fiduciaries is a current or former employee of Chase or its affiliates. Following Leonardi's appeal, Farrell apparently requested a written legal opinion regarding the claim from the law firm of Milbank, Tweed, Hadley & McCloy. In a written opinion dated June 14, 1995, attorneys Fred C. Kneip[7] and Jean M. Tabberson wrote to Farrell and set forth the reasons why they believed that Leonardi's appeal should be denied. Kneip and Tabberson analyzed the retirement Plan[8] and concluded that Leonardi's interpretation was "based on an unreasonable interpretation of the terms of the retirement plan." Specifically, they concluded that Leonardi was attempting to read Subsection 7.9 in isolation, instead of reading it in context with Subsections 7.1 and 7.11. They also noted that Leonardi's interpretation would make Subsections 7.11 and 7–A.6 superfluous. Moreover, they noted that Leonardi's interpretation was inconsistent with the manner in which the 1989 Plan had been consistently administered since its adoption.

Also on June 14, 1995, three attorneys from the Milbank Tweed Hadley & McCloy law firm, Naill O'Toole, Fred C. Kneip and John H. Kelly, wrote a two-page memorandum to the named fiduciaries of the Chase Plan, setting forth the legal and procedural guidelines which the fiduciaries were required to follow in considering Leonardi's appeal.

The named fiduciaries met on June 20, 1995 to consider the appeal but deferred making a decision until they had an opportunity to appoint special counsel, who had no prior involvement with the Chase Plan, to give a legal opinion on Leonardi's claim. The named fiduciaries also sought an opinion from their counsel, John H. Kelly, Esq. of the law firm of Milbank, Tweed, Hadley & McCloy, which firm also represented the plan sponsor, Chase. The fiduciaries chose as their special benefits counsel, Henry C. Blackiston III, Esq. and Kenneth Laverriere, Esq., of the law firm of Shearman & Sterling. On July 3, 1995, the named fiduciaries held a conference to further consider Leonardi's

7. Kneip drafted the 1989 Chase Plan.

8. They did not analyze the SPDs, as Leonardi did not base his claim upon them. In contrast with his amended complaint, Leonardi's original complaint alleged that the SPDs failed to inform him of his "right" to have his retirement benefits computed under the "all-Lincoln" formula for all his years of service.

claim. At that time, Attorney Blackiston reported that after reviewing the materials he had been given, including an opinion from Attorney Kelly, his preliminary reaction was to agree with Mr. Kelly. However, Blackiston stated that he needed to review additional information before rendering his final opinion. On July 6, 1995, the fiduciaries held another meeting to consider Leonardi's claim, at which time Blackiston opined that the claim should be denied. The fiduciaries then agreed that the claim should be denied. There is contained in the record a ten-page memorandum dated July 6, 1995, from John H. Kelly, Esq., analyzing Leonardi's claim and recommending that it be denied. However, the plaintiffs contend that the fiduciaries did not actually see this memorandum until after they had already made their decision to deny Leonardi's claim.

By letter dated July 7, 1995, the Named Fiduciaries informed Leonardi that his request was denied, because his claim depended upon an unreasonable interpretation of the terms of the Chase Plan. That letter states, in relevant part:

> In considering your appeal, the Named Fiduciaries reviewed a substantial amount of information, including your complaint against the Plan and the Named Fiduciaries, which you submitted in response to an invitation to present information to substantiate your claim; all provisions of the Plan, including specifically sections 7.1, 7.9, 7.11, and 7A–6; the 1984 and 1989 amendments to the Plan; the summary plan descriptions for the Plan; Plan benefit statements and other employee communications provided to you and to other Plan participants during the period relevant to your claim; and statements of Chase representatives regarding the administration of the Plan provisions and intent.

Plaintiff Leonardi is the only plaintiff who made a claim for increased benefits.[9] The other plaintiffs, whose claims are similar to Leonardi's, contend that because Leonardi exhausted his administrative remedies, they are excused from having to individually exhaust their administrative remedies.

The plaintiffs commenced this action on March 15, 1995, asserting the following causes of action:

1. Violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that the defendants denied them benefits to which they are entitled under the Chase Plan.

2. Violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that the defendants *intentionally* denied them benefits.

3. Misrepresentation, in breach of fiduciary duty under 29 U.S.C. § 1104(a)(1).

4. Intentional breach of fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1).

The plaintiffs have sued the plan, the Retirement and Family Benefits Plan of Chase Manhattan Bank, N.A., restated effective January 1, 1989, the plan sponsor, the Chase Manhattan Bank, N.A., and the named fiduciaries of the plan, Richard Shinn, Robert Field and James Riordan.

The plaintiffs contend that the court should review the fiduciaries' decision using the de novo standard of review, because the plan does not grant discretionary authority to the fiduciaries. In the alternative, the plaintiffs contend that the fiduciaries' decision was arbitrary and capricious. Regardless of the standard to be applied, the plaintiffs contend that the named fiduciaries' decision is flawed for several reasons. First, the plaintiffs contend that the fiduciaries misinterpreted Plan Subsection 7.9. The plaintiffs' position is summarized as follows: "Section 7.9 of the Current Chase Plan and the two SPDs issued in 1993 describing that plan require Defendants to pay Plaintiffs their

---

9. The defendants contend that the plaintiffs have not exhausted their administrative remedies with regard to certain claims that they allege are being raised here which were not raised before the fiduciaries.

VRP enhanced pension benefits calculated under the Lincoln First Retirement Plan for all their years of service." (Dolin Aff. [# 36], p. 2). Moreover, the plaintiffs state that the fiduciaries acted under a conflict of interest and breached their fiduciary duty by relying upon opinions of legal counsel, who also provided legal advice to the plan sponsor, Chase. Moreover, the plaintiffs contend that the fiduciaries relied upon incorrect information in making their decision. Specifically, they contend that the fiduciaries and their counsel, Mr. Blackiston, relied upon incorrect information regarding a former lawsuit against Chase entitled *DeLeo v. Chase Manhattan Bank N.A. et al.*, that was provided in a memorandum from John H. Kelly, Esq. (Dolin Aff. [# 45], Exhibit 2).[10]

The defendants contend that the Named Fiduciaries' decision is subject to the "arbitrary and capricious" standard of review, because Subsection 13.11 provides the fiduciaries with the "power to construe the provisions of the Retirement Plan and to determine any questions of fact which may arise thereunder." They contend that the fiduciaries' decision is not arbitrary and capricious, but rather, is based upon a plain reading of the Plan and the SPDs. Moreover, they argue that the plaintiffs' interpretation of subsection 7.9 of the Chase Plan would make other sections of the Plan superfluous, specifically Subsections 7.1, 7.11 and 7–A.6.

The Court has thoroughly reviewed the parties' written submissions and has carefully considered the oral arguments of counsel.

### ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

The plaintiffs bring this action pursuant to 29 U.S.C. § 1132, which states, in relevant part, that

[a] civil action may be brought—

---

**10.** The plaintiffs contend that the *DeLeo* case proves that the defendants intentionally misled them. The plaintiffs state that because of the factual allegations in the DeLeo case, Chase knew there was a problem with its

SPDs because they failed to give proper notice that certain benefits were being terminated, but it did nothing to clarify those SPDs. The plaintiffs alleged, upon information and belief, that the *DeLeo* action was settled.

(1) by a participant or beneficiary—

* * * * * *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

* * * * * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

 As a preliminary matter, the Court must determine the appropriate standard of review under which to review the fiduciaries' decision. ERISA does not set forth a standard of judicial review of benefit determinations by fiduciaries or plan administrators. However, in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that

[c]onsistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S.Ct. 948. However, even though a plan may give the administrator or fiduciaries discretion to interpret the terms of the plan generally, where the specific section at issue contains categorical language which requires no exercise of discretion, the Court may use a de novo standard to review the fiduciaries' application of that section. *See, Heidgerd v. Olin Corp.,* 906 F.2d 903, 908–909 (2d Cir.1990). As the Second Circuit held in *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 59 (2d Cir.1994), where "plan language categori-

cally states that certain benefits will be provided, de novo review is appropriate because unambiguous language leaves no room for the exercise of discretion."

Here, it is clear that the plan contains language that gives the fiduciaries fairly broad discretion, and which, under *Firestone,* would require the Court to apply an arbitrary and capricious standard of review. The plan states, in relevant part, that

[t]he Named Fiduciaries shall have full discretionary power to construe and interpret the provisions of the Retirement Plan and to determine any questions of fact and eligibility for benefits which may arise under the Retirement Plan.

(1989 Chase Plan, Section 13.11, as amended). The plaintiffs, however, contend that pursuant to *Heidgerd,* the Court must apply a de novo standard because the central provision of the plan at issue here is written in categorical terms: "Notwithstanding anything contained in this Section 7 to the contrary, the Retirement Benefit of a Member who was a participant in the Lincoln First Bank's Retirement Plan immediately prior to becoming a Member in the Retirement Plan **shall be** equal to the greater of: (i) the Retirement Benefit of such Member calculated without regard to this Section 7.9, or (ii) that benefit which would have been payable to such employee under the Lincoln First Bank's Retirement Plan...." (Chase Plan, Subsection 7.9) (Emphasis added). However, this dispute does not turn upon one section of the plan viewed in isolation, but rather, upon an interpretation of the plan as a whole, and the parties disagree as to the correct interpretation. Therefore, the Court finds that the named fiduciaries were required to exercise discretion in construing the terms of the plan. *See, Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1271 (2d Cir.1995) (holding that where a fiduciary is given discretion, a disagreement over the meaning of a term renders the term uncertain or disputed, requiring the fiduciary to ex-

ercise his interpretive discretion). Accordingly, *Heidgerd* is inapplicable to this case.

In the alternative, the plaintiffs contend that the standard of review should be de novo, because the version of Subsection 13.11 of the Plan set forth in the preceding paragraph was not adopted until December 22, 1994, a date subsequent to the plaintiffs' election to take early retirement became irrevocable on December 19, 1994. The plaintiffs cite five cases in support of this proposition: *Oil, Chem. & Atomic Workers Local Union, 4–447 v. Chevron Chem. Co.*, Civ.A. No. 91–4587, 1994 WL 10149 (E.D.La. Jan. 10, 1994); *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1269 (2d Cir. 1995); *Schein v. News America Publ'g Inc.*, No. 89 Civ. 0052(MBM) 1991 WL 117638 at *5 (S.D.N.Y. Jun. 24, 1991); *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 875, 884 (S.D.N.Y.1994); and *Medina v. Time Ins. Co.*, 3 F.Supp.2d 996 (S.D.Ind.1998). The Court disagrees and finds that these cases are inapposite, particularly *Jordan*, which expressly declined to decide this very issue. 46 F.3d at 1269. *Oil, Chem. & Atomic Workers* is factually dissimilar from the instant case because its plan, unlike the Chase Plan, contained an express provision that "[a]ny amendment or termination of the Plan will not affect any claim incurred by a Member or Covered Dependent before the amendment." 1994 WL 10149 at *4; *see also, Blessing v. Deere & Co.*, 985 F.Supp. 886, 892–93 (S.D.Iowa 1997) (noting that the plan in *Oil, Chem & Atomic Workers* contained an express provision that subsequent amendments of the plan would not affect claims incurred prior to the amendment). *Schein* is factually dissimilar, because the plan in that case contained an, express provision that the plaintiff's claim would, be determined under the plan as it existed during the period of his employment, and the plan was not amended to give the administrator discretionary authority until a year after

the plaintiff completed his employment. 1991 WL 117638 at *5. The plaintiffs here have not pointed to any similar language in the Chase Plan. Finally, *Algie* and *Medina* both involve the retroactive elimination of employee benefits after the employee becomes entitled to that benefit, which is not the case here.

The plaintiffs' argument would be unavailing in any event because, as in *Jordan*, the Court finds that the arbitrary and capricious standard would be required even if the Court refers to the earlier version of Plan Subsection 13.11, which states: "13.11 *Power to Construe.* The Named Fiduciaries shall have power to construe the provisions of the Retirement Plan and to determine any questions of fact which may arise thereunder." This language is at least as broad as that found by the Second Circuit in *Jordan* to require an arbitrary and capricious standard.[11] Accordingly, the Court finds that the arbitrary and capricious standard of review is appropriate here, regardless of which version of Subsection 13.11 it applies.

■ Even where the arbitrary and capricious standard is appropriate, the existence of a conflict of interest may require a court to apply a stricter level of scrutiny. As the U.S. Supreme Court held in *Firestone*, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. 948 (citation and internal quotation marks omitted). The Second Circuit has held that

> in cases where the plan administrator is *shown to have a conflict of interest*, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious is as follows: Two inquiries are pertinent. First,

**11.** The language found to require an arbitrary and capricious standard of review in *Jordan* is as follows: "The Retirement Committee shall pass upon all questions concerning the application or interpretation of the provisions of the Plan." 46 F.3d at 1269.

whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo. *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1255–56 (2d Cir.1996) (emphasis added). Thus, as a threshold matter, the plaintiff must demonstrate the existence of an actual conflict of interest. Here, the plaintiffs contend that a conflict of interest does exist, because the plan administrator who initially denied Leonardi's claim, Mr. Farrell, is an employee of Chase. (P's memo # 31, p. 25). However, "the simple fact that the administrator of a plan ... happens to be 'an arm of the employer' does not in itself create a conflict of interest." *Jordan*, 46 F.3d at 1274. Nor have the plaintiffs otherwise shown that Mr. Farrell had a conflict of interest. Moreover, the Court here is not reviewing Mr. Farrell's determination, but rather the determination of the named fiduciaries, none of whom are current or former employees of Chase. The plaintiff has also failed to demonstrate that the fiduciaries acted under a conflict of interest when they considered legal opinions from members of Milbank, Tweed, Hadley & McCloy. It is undisputed that in order to avoid a potential conflict, the fiduciaries retained special counsel who had no prior connection with Chase to advise them regarding Leonardi's appeal. Moreover, the special counsel concurred with the legal opinions provided by Milbank Tweed. Accordingly, the plaintiffs have failed to demonstrate that the fiduciaries acted under a conflict of interest.

■ The Court must now analyze whether the fiduciaries' decision was arbitrary and capricious. As the Second Circuit held in *Jordan*,

[t]he arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." The court may not upset a reasonable interpretation by the administrator.

46 F.3d 1264, 1271 (citations and internal quotation marks omitted). "The issue is whether the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law. Substantial evidence in turn is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Maida v. Life Ins. Co. of North America*, 949 F.Supp. 1087, 1091 (S.D.N.Y.1997) (citations and internal quotation marks omitted). In evaluating whether a fiduciary's determination is arbitrary and capricious, courts have considered such factors as the language, purpose, intent and history of the plan, including past interpretation and administration of the plan. *O'Neil*, 37 F.3d at 59–60. In an ERISA action, "a district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Where the terms of a plan and those of a plan summary conflict, it is the plan summary that controls. *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–908 (2d Cir. 1990).

■ Applying the foregoing principles of law to the facts of this case, the Court finds, as a matter of law, that the fiduciaries' determination was not arbitrary and capricious. In fact, for the reasons that follow, the Court concurs with the fiduciaries' determination, and would have reached the same conclusion even if it had applied a de novo standard of review. Section 2.40 of the plan states, in relevant part, that the term "Retirement Benefit"

means "monthly payments ... as determined under Section 7 or Section 7–A." Subsection 7.1 states, in relevant part: *"In General* Except for the case of an Eligible Member described in Section 7–A.6 [grandfathered employee] who makes the election provided in such section, the Retirement Benefit of a Member under this Section 7 ... shall be the net amount of a *benefit* determined under this Section 7 *as of December 31, 1988."* (Italics added). Accordingly, Subsection 7.1 establishes that any "benefit" computed under Section 7 will be determined as of December 31, 1988. The rest of Section 7 deals primarily with the formula for computing a benefit under the Chase Plan. However, Section 7.9 states that "[n]otwithstanding anything contained in this Section 7 to the contrary, the Retirement *Benefit* of a Member who was a participant in the Lincoln First Bank's Retirement Plan immediately prior to becoming a Member in the Retirement Plan shall be equal to the greater of: (i) the Retirement *Benefit* of such member calculated [using the Lincoln plus Chase formula] or (ii) that *benefit* [computed using the all Lincoln formula]." (Italics added). The plaintiffs' case is premised largely, if not entirely, on a selective reading of the plan which views the language "notwithstanding anything contained in this Section 7 to the contrary" in isolation.[12] However, it is significant that, unlike Subsection 7.1, Subsection 7.9 does not refer to a date upon which benefits are to be computed. Subsection 7.1 is clear that a "benefit" as determined under that section will be computed as of December 31, 1988. The rest of Section 7 merely provides the different formulas for computing a "bene-

fit." [13] The other subsections in Section 7, including Subsection 7.9, do not change the date for computation of the benefit. Therefore, the Court finds that Section 7.9, by its own terms, refers only to the method of computing a "benefit," but does not alter the computation date of December 31, 1988 established by Section 7.1. Accordingly, Section 7.9 does not allow the plaintiffs to have their benefits earned after 1988 computed under the "all-Lincoln" formula.

The Court further notes that the plaintiff's interpretation of Subsection 7.9 would effectively nullify Subsections 7.1 and 7.11, as well as Section 7–A.6, with respect to former Chase Lincoln employees. However, the Court must interpret the entire plan to "safeguard against adopting an interpretation that would render any individual provision superfluous." *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993). The interpretation of the plan urged by the defendants gives meaning to all of the plan provisions, and the Court concurs with that interpretation.

The Court similarly rejects the plaintiffs' contention that the SPDs issued by Chase expressly guarantee them the right to have their benefits computed under the "all-Lincoln" formula for all years of service. First, the Court notes that the plaintiffs' argument here regarding the SPDs is exactly the opposite of the argument made in their original complaint, which complaint was submitted to the named fiduciaries when Mr. Leonardi appealed the plan administrator's decision.[14] Thus, while the

---

**12.** Plaintiffs' memorandum of law [# 31] states that "[t]his case turns on the meaning of Section 7.9(ii)." (p. 10) (Emphasis in original).

**13.** The Lincoln Plan formula and the Chase Formula, while both "final pay formulas" based upon final average compensation and years of service, use different mathematical formulas. Accordingly, it was necessary for the plan documents to differentiate between the two formulas.

**14.** In their amended complaint and in this motion for summary judgment, the plaintiffs contend that "since the CURRENT CHASE PLAN went into effect on January 1, 1989, Defendants have continued to distribute to Plaintiffs and other participants *[SPDs] which clearly give Plaintiffs and other ELIGIBLE LINCOLN RETIREES the right to receive the greater of Payment Option A or B as their retirement benefit."* (Plaintiffs' Amended Complaint [# 26], ¶ 81) (Italics added). However, the plaintiffs' original complaint [# 1]

plaintiffs now argue that it is obvious that the SPDs guarantee them the benefits they seek, they originally argued that the SPDs failed to inform them of this very fact. The original complaint therefore belies any claim that the plaintiffs relied upon the SPDs in forming their belief that they continued to have the right to choose the "all-Lincoln" formula after January 1, 1989. In any event, the Court finds that the SPDs are consistent with the plan. As with the Plan itself, the plaintiffs' contention that the SPDs are misleading is based upon a selective reading of those plan summaries. For example, with regard to the 1989 summary, the plaintiffs correctly note that it directs "Participants of Chase Lincoln First Bank Retirement Plan" to look to Appendix B because "Special rules apply for both service and benefits." The plaintiffs then reason that because Appendix B sets forth the "greater of (i) or (ii) formula," that they are entitled to receive the "all-Lincoln" formula for all years of service. However, this ignores the fact that the 1989 SPD also directs "Chase Retirement Plan Members on or before December 31, 1988", to go to Appendix A, because they "may be 'grandfathered' in certain benefits." The plaintiffs were Chase Retirement Plan Members on and before December 31, 1988 [15], yet they take the position that the only portion of the 1989 SPD that applied to them was Appendix B. However, Appendix A states that "[i]f you were a member of the Retirement Plan on December 31, 1988, and you retire or terminate your employment after January 1, 1989, *the provisions of the old formula will apply to benefits you accrued as of December 31, 1988.*" (Emphasis added).

The Court finds that if one reads the two appendixes together, Appendix A establishes the date for computation of benefits, while Appendix B merely sets forth the formula for computing that benefit available to former Chase Lincoln employees. Appendix B contains no date for computation and does not otherwise alter the date for computation of pre–1989 benefits set by Appendix A. The plaintiffs also appear to disregard the fact that the main body of the 1989 summary informs them that "[e]ffective January 1, 1989, the Chase Retirement Account Plan was amended to add the Chase Retirement Account," and that "benefits for those members who participated in the Chase Retirement Plan prior to January 1, 1989, and other retirement programs of Chase affiliates, prior to adoption of the Retirement Plan by such affiliates are described in separate appendices." The Court has reviewed the SPDs, the relevant portions of which are set forth above, and finds, as a matter of law, that they do not grant the plaintiffs the benefits they seek.

■ The plaintiffs also contend that even if the SPDs do not affirmatively grant them the benefits they seek, they fail to inform them that their rights under the former plan have been terminated. The plaintiffs state that "neither the Defendants nor their human resources employees can point to any language in any

---

states, in relevant part, that "since the CURRENT CHASE PLAN went into effect on January 1, 1989, defendants have *failed to inform plaintiffs and other participants in SPDs* that under Section 7.9 of the CURRENT CHASE PLAN, ELIGIBLE LINCOLN RETIREES may choose the payment option—A or B—that produces the greater amount of retirement benefit.... Thus, in both the VRP package as well as in the SPDs describing participants' rights under the CURRENT CHASE PLAN, *defendants intentionally and/or negligently omitted* key and material information about plaintiffs' right to chase the payment option—A or B—that produced the greater benefit....

Plaintiffs here are ... alleging that defendants have *omitted* in all relevant SPDs that ELIGIBLE LINCOLN RETIREES were entitled to choose between the CHASE or LINCOLN formula—whichever produced the greater amount of benefit." (Plaintiffs' Original Complaint, ¶¶ 79–80, 87) (Italics added).

**15.** It is undisputed that effective January 1, 1988, the Chase Lincoln Plan was merged into the Chase Plan by the addition of Appendix VIII to that plan. Accordingly, the plaintiffs were members of the Chase plan "on or before December 31, 1988."

SPD that informed the Plaintiffs that their benefits under Section 7.9(ii) were frozen as of December 31, 1988, by Section 7.1 and 7.11." (Plaintiffs' Mem. of Law [# 31], p. 19). However, the plaintiffs are again relying upon a selective reading of the plan summaries. As noted above, the 1989 SPD states that "[e]ffective January 1, 1989, the Chase Retirement Plan was amended to add the Chase Retirement Account (CRA)," and that "[i]f you were a member of the Retirement Plan on December 31, 1988, and you retire or terminate your employment after January 1, 1989, *the provisions of the old formula will apply to benefits you accrued as of December 31, 1988.*" The 1993 "Retirement Plan" SPD states, in relevant part

This is how the plan works: Each Year the Plan will credit a Chase Retirement Account (CRA) set up in your name.... *Your benefit for service before 1989 is calculated as of December 31, 1988, under the old formula.*... If you participated in the Chase Retirement Plan before 1989 or in another retirement program of a Chase affiliate, your benefits for *that service* are described separately at the end of this booklet, beginning on page 19.

The SPD issued in 1994, entitled "Retiree Benefits Summary," states, in relevant part: **"The Retirement Plan** ... *If you retired after December 31, 1988 and were not eligible for the special grandfathering rules, your retirement benefit consists of your Chase Retirement Account (CRA) balance, plus the benefit you earned under the prior formula as of December 31, 1988.*" (Plaintiff's Exhibit 8, p. 38) (Italics added). Accordingly, the Court finds that the plan summaries adequately informed the plaintiffs that their benefits under the former plan were frozen as of December 31, 1988.

The Court further finds that the fiduciaries' decision is not rendered arbitrary and capricious by reason of any reliance upon incorrect information. The plaintiffs state that "[t]he essence of the *DeLeo* complaint was significantly misrepresented to the Named Fiduciaries (Milbank's July 6, 1995

memorandum to the Named Fiduciaries signed by John Kelly)." (Dolin Aff. [# 45], p. 16, ¶ 37). However, the Court notes that the plaintiffs also take the exact opposite position, and contend that the named fiduciaries did not consider Mr. Kelly's memorandum, discussing *DeLeo,* when they made their decision to deny Leonardi's claim. (See, Plaintiffs' Counterstatement of Facts [# 46], ¶¶ 27, 30). In any event, the Court has reviewed the *DeLeo* complaint and finds that the July 6, 1995, Kelly memorandum accurately set forth the facts of that case. Accordingly, the Court rejects the plaintiffs' contention that the named fiduciaries relied upon incorrect information regarding the significance of the *DeLeo* action, as it is without a basis in fact in the record. The plaintiffs also claim that the Shearman & Sterling opinion is defective because the attorney mistakenly "relied upon the fact that the CRA notice was delivered to employees in 1988." (Dolin Affidavit [# 45], p. 17). Plaintiff's counsel states that "[t]here is no evidence that this notice was delivered to Plaintiffs." (Id.) However, the record contains clear and uncontroverted evidence that the plaintiffs did receive timely notice that the Chase Plan was switching to CRAs as of January 1, 1989. (See, Plaintiff's Reply Mem. [# 49], Exhibit C, Boesel Dep., p. 50; Exhibit D, Leonardi Dep., p. 51; Exhibit G, Henry Dep., p. 45).

## CONCLUSION

Based upon the foregoing, there is no basis to find that the defendants wrongfully denied the plaintiffs benefits, nor is there any basis to find that the defendants breached their duty as fiduciaries. Accordingly, the plaintiffs' motion for summary judgment [# 36] is denied in all respects. The defendants' motion for summary judgment [# 29] is granted in its entirety.

So ordered.